**Joseph QUEEN, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 03–95–00738–CR.

Court of Appeals of Texas, Austin.

Feb. 27, 1997.

Rehearing Overruled March 27, 1997.

Discretionary Review Refused June 4, 1997.

Christian A. Hubner, Icenhauer–Ramirez & Hubner, P.C., Austin, for appellant.

Ronald Earle, District Attorney, Jonathan D. Stick, Assistant District Attorney, Austin, for appellee.

Before CARROLL, C.J., and JONES and KIDD, JJ.

KIDD, Justice.

Ernest Saldana was robbed and beaten to death in his Austin apartment on November 3, 1994. Based on this incident, a jury convicted appellant of capital murder, aggravated robbery, and engaging in organized criminal activity. Tex. Penal Code Ann. §§ 19.03(a)(2), 29.03(a)(1) (West 1994), § 71.02(a)(1) (West Supp.1997).[1] The State having waived the death penalty, the district court assessed appellant's punishment for capital murder at imprisonment for life. Tex.Code Crim. Proc. Ann. art. 37.071, § 1 (West Supp.1997). The court assessed punishment at imprisonment for fifty years for each of the other offenses.

David Ruiz, Jr. testified that he, appellant, Chris Paz, and Robert Ramirez were "hanging around" a grocery store when appellant noticed Saldana leave the store with a sum of money. The four men decided to rob Saldana and, to that end, followed him across the street to his apartment. To gain admission into the apartment, they told Saldana they had crack cocaine and offered to share it with him. Once inside, Paz struck Saldana in the face, causing him to fall onto a bed. Appellant, Ramirez, and Ruiz immediately joined in the attack. Saldana fell to the floor as the men continued to pummel him. During the assault, appellant and Ramirez went through Saldana's pockets. After finding money, appellant and Ramirez left the apartment but

---

1. All subsequent references to the Penal Code are to Tex. Penal Code Ann. (West 1994) unless otherwise indicated. The 1995 amendment to section 71.02(a) is irrelevant to this cause.

Paz and Ruiz remained and continued the assault. Paz began to stomp and kick Saldana's head. When Paz finally stopped beating Saldana, he and Ruiz searched the apartment. They left after finding $100. The medical examiner testified that Saldana's body was covered by numerous bruises and abrasions, and that his death was caused by intracranial bleeding resulting from multiple blows to the head.

In his written statements to the police and in his trial testimony, appellant admitted going to Saldana's apartment but denied being part of any advance plan to commit a robbery. Appellant conceded, however, that he struck Saldana and searched his pockets after the assault began. Appellant claimed he did not intend to harm Saldana and did not believe at the time that Paz intended to do so. Appellant said that he and Ramirez fled the apartment with approximately $175.

## Double Jeopardy

The indictment contained four counts accusing appellant of capital murder (count one), murder (count two), aggravated robbery with serious bodily injury (count three, paragraph one), aggravated robbery of a disabled person (count three, paragraph two), and engaging in organized criminal activity (count four). Over appellant's objection that the State should be required to elect a single count, all counts were submitted to the jury. The jury convicted appellant on counts one, three (paragraph one), and four.[2]

In points of error one and two, appellant contends the double jeopardy clauses of the Texas and United States constitutions were violated when he was adjudged guilty and punished for three offenses arising out of the same transaction. U.S. Const. amends. V, XIV; Tex. Const. art. I, § 14. Appellant does not separately argue his state and federal constitutional claims, and proffers no argument or authority to support a holding that, in the context of this cause, the Texas Constitution's double jeopardy clause differs

meaningfully from the Fifth Amendment. We therefore overrule point of error one, the state double jeopardy claim, and will conduct our analysis under the federal constitution. *Ex parte Granger,* 850 S.W.2d 513, 515 n. 6 (Tex.Crim.App.1993).

The Fifth Amendment guarantee against double jeopardy embodies three protections: against a second prosecution for the same offense following conviction, against a second prosecution for the same offense following acquittal, and against multiple punishments for the same offense. *Illinois v. Vitale,* 447 U.S. 410, 415, 100 S.Ct. 2260, 2264, 65 L.Ed.2d 228 (1980); *Cervantes v. State,* 815 S.W.2d 569, 572 (Tex.Crim.App.1991). Appellant invokes the third of these protections. Appellant did not raise his double jeopardy claim below, but under the circumstances presented, the alleged violation may be raised for the first time on appeal. *Shaffer v. State,* 477 S.W.2d 873, 876 (Tex.Crim.App. 1971); *Casey v. State,* 828 S.W.2d 214, 216 (Tex.App.—Amarillo 1992, no pet.).

The double jeopardy guarantee against multiple punishments for the same offense does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended. *Missouri v. Hunter,* 459 U.S. 359, 366, 103 S.Ct. 673, 678, 74 L.Ed.2d 535 (1983); *Ex parte Kopecky,* 821 S.W.2d 957, 959 (Tex.Crim.App. 1992). When the same conduct violates more than one distinct penal statute and each statute requires proof of a fact that the other does not, it is presumed that the two offenses are not the same and that the legislature intended to authorize multiple punishments. *Hunter,* 459 U.S. at 366, 103 S.Ct. at 678; *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932). Conversely, if all the elements of one statutory offense are contained within the other, it is presumed that the two offenses are the same and that the legislature did not intend to authorize punishment for both. *Whalen v.*

2. The murder and capital murder counts, and the two theories of aggravated robbery, were submitted in the alternative. Having found appellant guilty of capital murder and aggravated robbery with serious bodily injury, the jury did not consider whether appellant was guilty of murder or aggravated robbery of a disabled person. The court's charge also included an instruction on robbery as a lesser included offense, conditioned on the jury finding appellant not guilty of aggravated robbery.

*United States,* 445 U.S. 684, 693–94, 100 S.Ct. 1432, 1438–39, 63 L.Ed.2d 715 (1980).

The Texas Court of Criminal Appeals recently observed that "the core meaning of *Blockburger* is now evidently more in dispute than ever before," and that "[t]he only proposition upon which everyone seems to agree is that greater inclusive and lesser included offenses are the same for jeopardy purposes." *Parrish v. State,* 869 S.W.2d 352, 354 (Tex.Crim.App.1994). The court went on:

> In Texas, an offense is considered to be included within another if, among other things, "it is established by proof of the same or less than all the facts required to establish the commission of the offense charged[.]" Tex.Code Crim. Proc. Ann. art. 37.09(1) (West 1981). Our statute law thus describes includedness in much the same way *Blockburger* describes sameness. Yet we have long considered more than merely statutory elements to be relevant in this connection.... We likewise think it reasonably clear from the various opinions in *Dixon* that the essential elements relevant to a jeopardy inquiry [under *Blockburger*] are those of the charging instrument, not of the penal statute itself.

*Id.* (discussing *United States v. Dixon,* 509 U.S. 688, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993)).[3]

### 1. Capital murder and aggravated robbery.

Following *Parrish,* we refer to the indictment to determine the essential elements relevant to the jeopardy inquiry. Count one of the indictment alleged that

Robert Ramirez and Joseph Queen [appellant] ... in the course of committing and attempting to commit robbery of Ernest Saldana did then and there intentionally commit murder by causing the death of an individual, Ernest Saldana, by striking and kicking and stomping Ernest Saldana with hand and foot.

This count alleged the offense of capital murder in the course of committing or attempting to commit robbery. *See* Penal Code § 19.03(a)(2). For the purpose of double jeopardy analysis, this is a separate and distinct offense. *Whalen,* 445 U.S. at 693–94, 100 S.Ct. at 1438–39.

Count three, paragraph one alleged that

Robert Ramirez and Joseph Queen [appellant] ... while in the course of committing theft of property and with intent to obtain and maintain control of the property, intentionally, knowingly and recklessly cause[d] serious bodily injury to another person, namely: Ernest Saldana by striking and kicking and stomping Ernest Saldana.

This count alleged aggravated robbery with serious bodily injury. *See* Penal Code § 29.03(a)(1).

The allegation in count one that appellant and Ramirez were "in the course of committing ... robbery"[4] incorporated the allegation in count three, paragraph one that they were "in the course of committing theft of property and with intent to obtain and maintain control of the property." *See* Penal Code § 29.02(a). The allegation in count one that Ramirez and appellant intentionally murdered Saldana incorporated the allegation in count three, paragraph one that they "intentionally, knowingly, *and* recklessly

---

3. The core meaning of article 37.09(1) is hardly less disputed than the core meaning of *Blockburger.* Compare, e.g., *Broussard v. State,* 642 S.W.2d 171, 173 (Tex.Crim.App.1982) (robbery was lesser included offense of capital murder) *with Woodkins v. State,* 542 S.W.2d 855, 858 (Tex.Crim.App.1976) (robbery was not lesser included offense of capital murder); *and Campbell v. State,* 571 S.W.2d 161, 162 (Tex.Crim.App. 1978) (theft was lesser included offense of aggravated robbery) *with Jacob v. State,* 892 S.W.2d 905, 909 (Tex.Crim.App.1995) (aggravated assault was not lesser included offense of burglary with intent to commit aggravated assault).

4. It was impossible for appellant and Ramirez to murder Saldana in the course of *attempting* to rob him and this portion of the first count was a nullity. Robbery is an *assault* in the course of *committing theft* with intent to obtain or maintain control of the property. Penal Code § 29.02(a). Attempted robbery is an act, committed under the requisite circumstances and with the requisite intent, that tends but fails to effect the *assault.* Penal Code § 15.01(a).

cause[d] serious bodily injury" to· Saldana. (Emphasis added.) *See* Penal Code § 1.07(a)(46); Tex.Code Crim. Proc. Ann. art. 37.09(3) (West 1981). Thus, every element of the alleged aggravated robbery with serious bodily injury, including death, was included within the alleged capital murder in the course of robbery, and it was impossible for the State to prove the latter offense without also proving the former. Or, to phrase it differently, the allegations of aggravated robbery required no proof beyond that required for the allegations of capital murder.

The State relies on two opinions to justify appellant's convictions for both capital murder and aggravated robbery. *See Cervantes v. State*, 815 S.W.2d 569 (Tex.Crim.App. 1991); *Scott v. State*, 861 S.W.2d 440 (Tex. App.—Austin 1993, no pet.). In *Cervantes* the defendant shot a police officer during the course of an armed robbery and was subsequently tried and convicted for both *attempted* capital murder and aggravated robbery. The court of criminal appeals rejected the defendant's contention that he was being twice punished for the same offense. However, unlike the cause before us, the defendant in *Cervantes* was not indicted for attempted capital murder in the course of committing robbery. Instead, the indictment alleged that the intended murder victim was a police officer acting in the lawful discharge of an official duty. *See* Penal Code § 19.03(a)(1). Thus, the essential elements of the attempted capital murder did not incorporate the elements of robbery. While the State proved the robbery in order to prove that the officer was acting in the course of an official duty, this was merely an evidentiary fact and the two offenses were not the same for double jeopardy purposes. *Cervantes*, 815 S.W.2d at 574.

In *Scott*, the defendant entered his former wife's home without consent and attempted to shoot both his wife and their daughter. The defendant was indicted for attempted capital murder of his wife and daughter in the course of the same transaction, attempted capital murder of his daughter in the course of committing or attempting to commit burglary of a habitation, and burglary of a habitation by entering and attempting to commit murder or committing aggravated assault. *See* Penal Code §§ 19.03(a)(2), 19.03(a)(7)(A), 30.02(a)(3). Both theories of attempted capital murder were submitted to the jury and the jury returned a general verdict of guilty without specifying the theory of the offense on which it was based. The defendant was also convicted of burglary of a habitation. On appeal, the defendant contended that, if the jury found him guilty of attempted capital murder in the course of committing burglary, the additional conviction for burglary constituted an unconstitutional double punishment for the same offense.

This Court overruled Scott's contention on the ground that each offense had a unique element. *Scott*, 861 S.W.2d at 446. Because the indictment alleged that the defendant attempted to kill his daughter while committing or *attempting* to commit burglary, it was possible to prove the alleged attempted capital murder without proving entry and therefore without proving burglary. And because the indictment alleged that the defendant entered the habitation and committed attempted murder or *aggravated assault*, it was possible to prove the alleged burglary of a habitation without proving an intent to kill and therefore without proving attempted capital murder. The two offenses each had a unique element and passed the *Blockburger* test.

▉ In this cause, because all elements of aggravated robbery were included within capital murder as the two offenses were alleged in the indictment, it is presumed that the two offenses were the same for double jeopardy purposes. *See Whalen*, 445 U.S. at 693–94, 100 S.Ct. at 1438–39 (rape and felony murder in course of committing rape were same offense); *Harris v. Oklahoma*, 433 U.S. 682, 97 S.Ct. 2912, 53 L.Ed.2d 1054 (1977) (robbery with firearm and felony murder in course of committing robbery were same offense); *Brown v. Ohio*, 432 U.S. 161, 168, 97 S.Ct. 2221, 2226, 53 L.Ed.2d 187 (1977) (joyriding and auto theft were same offense). Because there is nothing to suggest that the legislature clearly intended to authorize punishment for both offenses, we hold that ap-

pellant's conviction and punishment for *both* capital murder and aggravated robbery violated the multiple punishment component of the Fifth Amendment double jeopardy clause.

■ Although appellant's capital murder and aggravated robbery sentences are being served concurrently, the double jeopardy violation cannot be considered harmless because a second conviction may have adverse collateral consequences apart from the concurrent sentence. *See Ball v. United States,* 470 U.S. 856, 864–65, 105 S.Ct. 1668, 1673–74, 84 L.Ed.2d 740 (1985). Because capital murder is a more serious offense than aggravated robbery, the judgment convicting appellant of the latter offense will be set aside. *Ex parte Pena,* 820 S.W.2d 806, 808–09 (1991). To this extent, appellant's second point of error is sustained.[5]

## 2. Capital murder and engaging in organized criminal activity.

■ We again refer to the indictment to determine the essential elements of engaging in organized criminal activity. *Parrish,* 869 S.W.2d at 354. Count four of the indictment alleged that

> Robert Ramirez and Joseph Queen [appellant] and Chris Paz ... with intent to establish, maintain and participate in a combination consisting of three or more of said defendant, and in the profits of said combination, did then and there commit the offense of robbery, and did then and there agree among themselves and with each other, to engage in conduct constituting said offense, and in pursuance to such agreement the defendants performed one or more overt acts, namely: Joseph Queen pulled on Ernest Saldana's leg and hit Ernest Saldana and Robert Ramirez took money from Ernest Saldana and Chris Paz hit and kicked and stomped Ernest Saldana.

Penal Code § 71.02(a)(1). When the offense alleged in count four is compared with the offense alleged in count one, it is obvious that each contains an element not found in the other. In order to convict appellant of capital murder, it was necessary to prove that Saldana was killed. Saldana's death was not an essential element of organized criminal activity as alleged in count four. In order to convict appellant of engaging in organized criminal activity, it was necessary to prove that he intended to establish, maintain, or participate in a combination. Such intent was not an element of capital murder as alleged in count one.

Appellant asserts that the capital murder and organized criminal activity offenses were the same for double jeopardy purposes because, under the court's charge, his guilt of capital murder rested on a finding that he was a party to a conspiracy to commit robbery. The court instructed the jury to convict appellant of capital murder if it found beyond a reasonable doubt that

> the defendant, Joseph Queen, entered into a conspiracy with Chris Paz to commit the felony offense of robbery, and that ... in the attempt to carry out this agreement ... Chris Paz did then and there intentionally kill Ernest Saldana by striking or kicking or stomping Ernest Saldana with hand or foot ... and that such offense was committed in furtherance of the unlawful purpose to commit robbery and was an offense that should have been anticipated as a result of the carrying out of the agreement.

*See* Penal Code § 7.02(b) (criminal responsibility for conduct of coconspirator). Appellant argues that because of this conspiracy element, engaging in organized criminal activity was a lesser included offense of capital murder as the two offenses were presented to the jury in the district court's charge.

Appellant relies on *Rutledge v. United States,* —— U.S. ——, 116 S.Ct. 1241, 134 L.Ed.2d 419 (1996). The question in *Rutledge* was whether a defendant could be punished for both engaging in a continuing criminal enterprise to violate the federal controlled substances act and conspiring to violate that act. *See* 21 U.S.C.A. §§ 846, 848 (West 1996). The Supreme Court found that proving a conspiracy under section 846

---

5. Given this result, we need not address appellant's contention that the convictions for aggra- vated robbery and engaging in organized criminal activity violated the double jeopardy clause.

did not require proof of any fact that was not also part of a continuing criminal enterprise under section 848, and therefore held that the two offenses were the same for double jeopardy purposes.

Because *Rutledge* involved the interpretation of federal statutes, its holding is not dispositive of appellant's contention in this cause. Moreover, *Rutledge* does not support appellant's contention that, when conducting a *Blockburger* analysis, we must examine the jury charge to determine the elements of an offense. We are aware of no authority stating that the trial court's jury charge is a relevant consideration under *Blockburger*.

Moreover, even if it is appropriate to compare application paragraphs in the court's charge when applying *Blockburger*, a comparison of the application paragraphs in this cause does not lead to the conclusion that the capital murder and organized criminal activity offenses were the same for double jeopardy purposes. The court instructed the jury to convict appellant of engaging in organized criminal activity if it found beyond a reasonable doubt that

> the defendant, Joseph Queen ... with intent to establish, maintain or participate in a combination consisting of himself and ... Chris Paz and Robert Ramirez, or in the profits of said combination ... did then and there commit the offense of robbery, and did then and there agree with one or more members of such combination ... to engage in conduct constituting the offense of robbery; and in pursuance of said agreement ... Joseph Queen, and one or more of the aforesaid other members of the combination ... each performed one or more overt acts ... namely: Joseph Queen pulled on Ernest Saldana's leg or hit Ernest Saldana, and Robert Ramirez took money from Ernest Saldana, and Chris Paz hit or kicked or stomped Ernest Saldana.

Assuming without deciding that a "combination" under section 71.02(a) is the same as a "conspiracy" under section 7.02(b), the charge required proof that appellant committed an overt act in order to convict him of engaging in organized criminal activity. Proof that appellant committed an overt act

was not required by the capital murder application paragraph. On the other hand, the court's charge authorized appellant's conviction as a party to the capital murder only if the jury found that Saldana's murder should have been anticipated as a result of carrying out the conspiracy. The organized criminal activity charge did not require proof of Saldana's murder, much less that it should have been anticipated by the parties to the combination.

As enacted by the legislature, as alleged by the State in the indictment, and as charged by the district court, the offenses of capital murder and engaging in organized criminal activity each contained at least one unique element. Therefore, it is presumed that the two offenses were not the same for double jeopardy purposes. *Blockburger*, 284 U.S. at 304, 52 S.Ct. at 182; *Parrish*, 869 S.W.2d at 354. Moreover, this Court has held that the express language of the organized criminal activity statute evinces the legislature's intent to allow punishment for both engaging in organized criminal activity and the underlying overt criminal offense. *Reina v. State*, 940 S.W.2d 770, 775–776 (Tex. App.—Austin 1997, no pet. h.). Accordingly, appellant's second point of error is overruled.

### Other Points of Error

■ In his third point of error, appellant contends the evidence does not legally support the capital murder conviction because the State failed to prove that Saldana's murder should have been anticipated as a result of carrying out the robbery conspiracy. *See Boozer v. State*, 717 S.W.2d 608, 611–12 (Tex. Crim.App.1984); *Benson v. State*, 661 S.W.2d 708, 714–15 (Tex.Crim.App.1982) (opinion on second motion for rehearing) (sufficiency of evidence measured against court's jury charge). To decide this question, we must determine whether, after viewing all the evidence in the light most favorable to the verdict, any rational trier of fact could have found this element of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Geesa v. State*, 820 S.W.2d 154 (Tex.

Crim.App.1991); *Griffin v. State*, 614 S.W.2d 155 (Tex.Crim.App.1981). The jury is the exclusive judge of the credibility of the witnesses and the weight to be given their testimony, and may accept or reject all or any part of the evidence. *Miller v. State*, 909 S.W.2d 586, 593 (Tex.App.—Austin 1995, no pet.).

Saldana was in a serious automobile accident in 1980. Brain damage suffered in that accident left him mentally impaired. In addition, Saldana experienced chronic back pain, walked with a pronounced limp, and had limited mobility. He had difficulty breathing and tired easily. Saldana's physical limitations were obvious to all who saw him, and the jury could rationally infer that appellant and his co-conspirators knew of them when they planned the robbery.

In contrast to Saldana, the four assailants were healthy young men between the ages of fifteen and twenty. Austin police officer John Colunga testified that Paz, the person who inflicted the fatal blows to Saldana's head, had a reputation in the community for being violent. At the time of the murder, appellant had known Paz for about two months, during which time he had "hung out" with him numerous times. Appellant knew that Paz was a member of a street gang named the East Grand Barrio and that this gang often fought with other gangs.

After tricking Saldana into allowing them into his apartment, the four men immediately attacked him in what the State accurately describes in its brief as "wolf-pack style." Although appellant was the oldest and largest of the four conspirators, he did not attempt to stop the assault on Saldana. Appellant testified that he thought the others would follow him when he left the apartment with the money found in Saldana's pocket, but conceded that Paz and Ruiz were continuing to beat Saldana when he and Ramirez left.

As appellant correctly points out, Ruiz testified that none of the conspirators mentioned killing or injuring Saldana prior to the attack and there is no *direct* evidence that the attack on Saldana was premeditated. It was not necessary, however, for the State to prove that the murder was planned or even that appellant foresaw it. The State had only to prove that the murder should have been anticipated as a result of the carrying out of the agreement. Considering the gross disparities in strength and stamina between the four conspirators and their intended victim, Paz's reputation for violence, and the viciousness of the attack on Saldana, we believe the jury could rationally conclude beyond a reasonable doubt that murder was an offense appellant should have anticipated as a result of carrying out the agreement to commit robbery. Point of error three is overruled.

■ Finally, appellant complains that Officer Colunga's testimony regarding Paz's reputation was irrelevant and should not have been admitted. Evidence is relevant if it has any tendency to make the existence of any consequential fact more or less probable than it would be without the evidence. Tex. R.Crim. Evid. 401. The State offered the testimony as a circumstance tending to show that appellant should have anticipated Saldana's murder. Appellant argues that the evidence was irrelevant to that issue because the State failed to show that appellant was familiar with Paz's reputation.

Questions of relevance should be left largely to the trial court, and that court's determination will not be disturbed on appeal absent a clear showing of an abuse of discretion. *Moreno v. State*, 858 S.W.2d 453, 463 (Tex. Crim.App.1993). While there was no direct evidence that appellant was familiar with Paz's personal reputation for violence, appellant was shown to have associated with Paz for two months and admitted knowing that Paz was a member of a street gang with a reputation for violence. We believe the jury could rationally infer from this evidence that appellant knew Paz's personal reputation. The district court did not abuse its discretion by overruling appellant's objection to the relevance of Colunga's testimony. Point of error four is overruled.

### Conclusion

The district court prepared three judgments, one for each of the offenses for which appellant was convicted. The judgment of

conviction for aggravated robbery is reversed and count three, paragraph one of the indictment is ordered dismissed. The judgments of conviction for capital murder and engaging in organized criminal activity are affirmed.