TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-96-00723-CR






Hoang Viet Huu Nguyen, a/k/a Vic Nguyen, Appellant



v.



The State of Texas, Appellee







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 331ST JUDICIAL DISTRICT


NO. 0963964, HONORABLE BOB PERKINS, JUDGE PRESIDING






 Appellant Hoang Viet Huu Nguyen was convicted of murder, see Tex. Penal Code
Ann. § 19.02(b) (West 1994), and engaging in organized criminal activity, see id. § 71.02. The
jury assessed punishment at ninety-nine years' confinement in the Texas Department of Criminal
Justice, Institutional Division, for each conviction. Nguyen appeals asserting five points of error: 
(1) the evidence is factually insufficient to support his conviction for murder, (2) the evidence is
legally insufficient to support his conviction for engaging in organized criminal activity, (3) the
evidence is factually insufficient to support his conviction for engaging in organized criminal
activity, (4) the trial court erred in refusing to instruct the jury on criminally negligent homicide,
and (5) the trial court erred in denying appellant's request that it order spectators to remove large
buttons portraying a color photograph of the deceased while they were in the courtroom. We will
affirm the murder conviction and reverse the conviction for engaging in organized criminal
activity.

FACTUAL AND PROCEDURAL BACKGROUND

 On April 21, 1995, Nguyen and a group of friends attended a party sponsored by
the Asian Cultural Committee on the University of Texas campus. The party ended about 2:00
a.m. and a group of twenty-five to thirty young people decided to have breakfast at a Coco's
restaurant located at IH35 and Oltorf Street in Austin. Also during this evening, the University
of Texas Latin American Students Association sponsored a party. A group of four young men
including Jose de la Morena left this party and also decided to have breakfast at Coco's.

 The two groups were seated near each other in the restaurant. A female in
Nguyen's group was walking back from the restroom past Morena's table when Morena said
"show me your nipples" or "sugar nipples." She returned to her friends and told them about the
remark. Her group soon left the restaurant, but seven males, including Nguyen, returned and
confronted Morena's group in the restaurant demanding that the person who made the statement
step outside.

 Three bouncers from a local nightclub were eating nearby and came over to help
calm the situation. The manager had someone call the police, and she asked Nguyen's group to
leave and asked Morena and his friends to finish their meals and leave. Nguyen's group left
immediately. Upon leaving the restaurant, Nguyen, Mike Ly, and Jason Pan agreed among
themselves to return and fight. They eventually went to Nguyen's apartment, and someone told
Nguyen to get the "gats," meaning guns. Nguyen retrieved a .22 semi-automatic rifle. As they
left the apartment, Mike Ly's roommate, Linh Pham, joined the group.

 The four rode back to Coco's in Mike Ly's small two-door car. Ly drove, Nguyen
rode in the front passenger seat, Pan sat behind Nguyen, and Pham sat behind the driver. They
testified that they intended to go back to the restaurant and scare Morena's group by shooting the
gun. When they returned to Coco's, they circled the restaurant checking the area for police and
verifying that their targets were still there. Ly parked the car next door to the restaurant. The
group sat quietly waiting in the car for Morena's group to exit the restaurant.

 Morena and two friends, Bryan Lord and Armando Gutierrez, left the restaurant
just before 4:00 a.m. Ly saw the group leaving and started the car. He pulled the car onto the
interstate access road just in front of Coco's. Morena and his friends were standing around Lord's
Volkswagen when Nguyen began firing the rifle. Morena received a fatal shot to the head as well
as a shot in the leg. Gutierrez received a shot in the leg, but Lord was not wounded.

 At trial, Nguyen admitted that he fired the weapon, that Ly drove the car, and that
Pan passed the gun to him from the backseat. He testified that he did not aim the rifle but merely
intended to scare the victims. He testified he "freaked out" when he learned on the news the next
night that Morena had died. Nonetheless, the jury convicted him of murder as well as engaging
in organized crime.


DISCUSSION

 In his first point of error, Nguyen asserts that the evidence is factually insufficient
to support a conviction for murder. In a factual-sufficiency review, the appellate court reviews
all the evidence without the prism of "in the light most favorable to the prosecution" used in a
legal-sufficiency review; the court may consider the testimony of defense witnesses and the
existence of alternative hypotheses. Stone v. State, 823 S.W.2d 375, 381 (Tex. App.--Austin
1992, pet. ref'd untimely filed). The court should set aside the verdict only if it is so contrary to
the overwhelming weight of the evidence as to be clearly wrong and manifestly unjust. Id.; see
Clewis v. State, 922 S.W.2d 126, 136 (Tex. Crim. App. 1996) (adopting the standard in Stone). 
The appellate court reviews the evidence weighed by the jury that tends to prove the disputed facts
and compares it to evidence that tends to disprove the disputed facts. Jones v. State, 944 S.W.2d
642, 647 (Tex. Crim. App. 1996). The court must be appropriately deferential so as to avoid
substituting its own judgment for that of the factfinder. Clewis, 922 S.W.2d at 133.

 Based on the indictment and relevant statute, to be found guilty of murder, Nguyen
had to have been found to have intentionally or knowingly caused Morena's death. (1) See Penal
Code § 19.02(b). A person acts intentionally to cause another's death when it is the actor's
conscious objective or desire to cause that result. See id. § 6.03(a). A person acts knowingly to
cause another's death when he is aware that his conduct is reasonably certain to cause that result. 
See id. § 6.03(b).

 Nguyen admits that the only disputed element is his intent at the time he fired the
rifle. To demonstrate the required intent, the State presented evidence that, although Nguyen fired
only a limited number of times, two of those bullets hit Morena, another bullet hit Gutierrez (who
was standing next to Morena), one hit the car next to Morena, two more hit nearby cars, one bullet
hit a restaurant window, and another hit a tree just in front of the restaurant. The victims stood
in the parking lot between Nguyen and the restaurant. The police found three empty shell casings,
and Ly found no more than six casings in his car the next day. Gutierrez testified hearing seven
or eight pops from the gun. We believe the evidence of the number of shots and the location of
bullet holes raises a reasonable inference that Nguyen intended to hit the victim.

 Nguyen points to the testimony of State witnesses to show why he and the others
had returned to Coco's with the gun. All stated that they only returned to the restaurant to scare
Morena's group. Nguyen himself stated, "I want the jury to know that there is never intent to hurt
anyone. Not really to hurt anyone. And I want the family to know also that I never meant to hurt
anyone." The distance between the shell casings found at the scene of the crime suggests the shots
were fired from a moving vehicle. Nguyen asserts that the evidence of bullet holes over a wide
area of the restaurant grounds indicates an intent to scare rather than an intent to hit a specific
target. Ly testified that Nguyen did not shoot directly at Morena but up into the air. Nguyen
contends that testimony the car was jerking and nearly stalled provides evidence of why Nguyen's
attempt to merely scare Morena failed.

 While Nguyen's testimony certainly challenges the State's evidence concerning his
mental state at the time in question, the jury is the exclusive judge of the credibility of the
witnesses. See Skillern v. State, 890 S.W.2d 849, 879 (Tex. App.--Austin 1994, pet. ref'd). 
Having reviewed all the evidence, including both Nguyen's statement that he was merely trying
to scare Morena as well as evidence of the number and location of the gunshots, we conclude that
the murder conviction is not so contrary to the overwhelming weight of the evidence as to be
clearly wrong and manifestly unjust. Point of error one is overruled.

 In his second point of error, Nguyen asserts that the evidence is legally insufficient
to support a conviction for engaging in organized criminal activity. In reviewing the legal
sufficiency of the evidence, we must determine whether, viewing the evidence in the light most
favorable to the prosecution, any rational trier of fact could have found the essential elements of
the offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979).

 Based on the indictment and the relevant statute, Nguyen could be found to have
committed the offense of engaging in organized criminal activity if, with the intent to establish,
maintain, or participate in a combination, he committed or conspired to commit aggravated assault
by threatening or causing bodily injury to Morena with a deadly weapon. See Penal Code
§ 71.02(a)(1). The offense requires both a mental intent regarding a "combination" and the
commission of one or more of a list of crimes. A "combination" is defined to mean "three or
more persons who collaborate in carrying on criminal activities." Id. In particular, Nguyen
asserts the evidence was insufficient to show that a "combination" existed.

 In Barber v. State, 764 S.W.2d 232, 236 (Tex. Crim. App. 1988), the court
discussed the meaning of "combination." (2) It stated that the term "collaborate" was not defined
in the statute, but found a workable definition of "collaborate" to be "working together with a
specified number of others in specified criminal activities." Id. (citing Lucario v. State, 677
S.W.2d 693, 699 (Tex. App.--Houston [1st Dist.] 1984, no pet.)). The issue Nguyen raises is
whether "combination" requires something more than a three-person conspiracy, namely some
degree of continuity. (3)

 Comparing the language of criminal conspiracy and combination, beyond the
difference in the number of participants required, a conspiracy requires that its participants agree
one or more of them will commit an offense (and that at least one participant commit an act in
furtherance of the agreement), see Penal Code § 15.02(a), while a combination requires that its
participants collaborate in "carrying on criminal activities." Id. § 71.01(a). (4)

 Like the term "collaborate," the phrase "carrying on" is not defined in the statute. (5) 
The term "carry on" is commonly defined as "conduct, manage" for the transitive form of the
verb. Webster's Third International Dictionary 344 (Philip B. Gove ed., 1986). Another
dictionary defines the transitive form of the verb "carry on" as "to maintain in operation <carried
on the business>." Webster's Ninth New Collegiate Dictionary 210 (Frederick C. Mish ed.,
1990). Furthermore, the term "carry on trade or business" is defined as "to conduct, prosecute
or continue a particular avocation or business as a continuous operation or permanent occupation." 
Black's Law Dictionary 214 (6th ed., 1991).

 The primary rule of statutory interpretation is that a court must look for and give
effect to the intent of the Legislature. Ex parte Matthews, 933 S.W.2d 134, 137 (Tex. Crim. App.
1996). To ascertain legislative intent, a court must look to the statute as a whole and not just to
isolated provisions. Morrison v. Chan, 699 S.W.2d 205, 208 (Tex. 1985). Language used later
in the Penal Code chapter on organized crime implies an element of continuity: for example, it
is no defense to prosecution for engaging in organized crime that "once the initial combination of
three or more persons is formed there is a change in the number or identity of persons in the
combination as long as two or more persons remain in the combination and are involved in a
continuing course of conduct constituting an offense under this chapter." Penal Code § 71.03(4)
(emphasis added).

 The legislative history of the statute also indicates that a "combination" is more
than a mere conspiracy or agreement to commit a single crime or engage in a single criminal
episode. The statute originated in the 65th Legislature as Senate Bill 151 and contained the
definition of "combination" currently found in the statute. The original House version of the
statute, however, defined a combination simply as five or more people who engage in a criminal
conspiracy as defined by section 15.02 (a) and (b) of the Penal Code. See House Comm. on
Criminal Jurisprudence, Bill Analysis, Tex. S.B. 151/ C.S.S.B. 151, 65th Leg., R.S. (1977). The
House definition was offered in a substitute for S.B. 151, but the conference committee rejected
the House/substitute version and adopted the language in the Senate version. See Conference
Comm. Report, S.B. 151, 65th Leg., R.S. (May 25, 1977).

 In general, the courts will give effect to all words in a statute and, if possible, will
not treat any language as surplusage. Chevron Corp. v. Redmon, 745 S.W.2d 314, 316 (Tex.
1987). In consideration of all these points, we are persuaded that the definition of "combination"
requires something beyond merely a three-person conspiracy and requires that the members of the
"combination" work together in a continuing course of criminal activities.

 In Carlson v. State, 940 S.W.2d 776, 779 (Tex. App.--Austin 1997, pet. ref'd),
this Court affirmed the defendant's conviction for engaging in organized crime. The State
compares the evidence of a combination in that case to the evidence found here. We believe,
however, that the cases are distinguishable. In Carlson, there was evidence that the defendant and
another man beat and burned a homeless man while a third man waited in a car. Id. The legal
sufficiency issue raised by the appellant in Carlson focused on whether all three of the persons
alleged to be members of the combination were actually involved in the assault, particularly the
person who waited in the car and did not participate in the actual beating. Id. The issue of
whether a combination must involve a continuing course of criminal activity was not raised.

 The State points to other cases in which single incident offenses lead to convictions
for engaging in organized crime. See Fletcher v. State, 960 S.W.2d 694 (Tex. App.--Tyler 1997,
no pet.); Queen v. State, 940 S.W.2d 781 (Tex. App.--Austin 1997, pet. ref'd); Brosky v. State,
915 S.W.2d 120 (Tex. App.--Fort Worth 1996, pet. ref'd); Jefferson v. State, 909 S.W.2d 247
(Tex. App.--Texarkana 1995, pet. ref'd); Ex parte Fite, 814 S.W.2d 253 (Tex. App.--Austin
1991, no pet.). However, in none of these cases did the defendant specifically raise the issue of
whether a "combination" requires continuity.

 Nguyen asserts that the members of a combination must collaborate in carrying on
criminal "activities," stressing the plural and arguing that an intent to collaborate on a single
criminal incident or episode does not constitute a combination, even though the offense itself only
requires the performance of one of the listed crimes. Importantly, we note that one may engage
in organized crime by committing one or more of the proscribed acts with the intent to establish
a combination; accordingly, the proscribed action may be the first actual crime committed by a
member of the combination. Nonetheless, there must be some evidence of intent to establish a
combination, i.e., a group of three or more that works together in continuing a course of criminal
activities.

 We now consider whether there is legally sufficient evidence to support a finding
that Nguyen intended to establish, maintain, or participate in a combination when he committed
the proscribed act. Such an intent may be inferred from circumstantial evidence. See Mayfield
v. State, 906 S.W.2d 46, 49 (Tex. App.--Tyler 1995, pet. ref'd). All of the evidence here,
however, indicates that the murder was committed with intent and agreement to retaliate through
the commission of a single offense; no evidence indicates an intent to establish, maintain, or
participate in a group that would work together in continuing a course of criminal activities. Point
of error two is sustained.

 Because we have sustained point of error two based on the legal sufficiency of the
organized crime conviction, we need not address point of error three, which is based on the factual
sufficiency of the organized crime conviction.

 In his fourth point of error, Nguyen argues that the trial court erred in refusing to
instruct the jury on criminally negligent homicide, which he asserts is a lesser-included offense
of murder. The offense of criminally negligent homicide is committed when a person causes the
death of an individual by criminal negligence. Penal Code § 19.057. A person acts with criminal
negligence with respect to the result of his conduct when he ought to be--but is not--aware of a
substantial and unjustifiable risk that the result will occur. Id. § 6.03(d).

 A two-prong test is to be met before a jury charge on a lesser-included offense must
be given: first, the lesser offense must be included within the proof necessary to establish the
charged; second, there must be some evidence that if the defendant is guilty, he is guilty only of
the lesser charge. Aguilar v. State, 682 S.W.2d 556, 558 (Tex. Crim. App. 1985); Royster v.
State, 622 S.W.2d 442, 447 (Tex. Crim. App. 1981). In applying the two-prong test, the trial
court should make a determination whether the evidence of the lesser offense would be sufficient
for a jury rationally to find that the defendant is guilty only of that offense, and not the greater
offense. Rousseau v. State, 855 S.W.2d 666, 673 (Tex. Crim. App. 1993).

 The key to criminal negligence is the failure of the actor to perceive the risk created
by his conduct. Lewis v. State, 529 S.W.2d 550, 553 (Tex. Crim. App. 1975). It is essential that
the record contain evidence showing an unawareness of the risk before a charge on criminally
negligent homicide is required. Mendieta v. State, 706 S.W.2d 651, 653 (Tex. Crim. App. 1986).

 Every case must be examined in the light of its particular facts and circumstances
to determine if the defendant was unaware of the risk his conduct created. Thomas v. State, 699
S.W.2d 845, 851 (Tex. Crim. App. 1985). In Thomas, there was evidence that the defendant
knew the gun was loaded, that he was familiar with guns and the potential for injury, and that he
pointed a gun toward someone else. Id. at 851-52 The mere fact that the defendant testified
someone bumped him, causing him to pull the trigger, does not necessarily alter the awareness of
risk. Id. at 850. Just because part of the conduct may be involuntary does not relieve a defendant
of responsibility and culpability for the entire action. Id. It may be the case that a defendant has
awareness of the risk and disregards it. Id; see Navarro v. State, 863 S.W.2d 191, 203-05 (Tex.
App.--Austin 1993) (evidence indicated appellant should have been aware of risk that his conduct
might kill victim), pet. ref'd, 891 S.W.2d 648 (Tex. Crim. App. 1995); cf. Molitor v. State, 827
S.W.2d 512, 526-29 (Tex. App.--Austin 1992) (Jones, J., dissenting) (anyone who knows nature
of guns, knows gun is loaded, and knowingly points gun toward another person cannot help but
be aware of risk even if gun discharges accidentally; but testimony that very act of pointing loaded
gun toward victim was not volitional requires charge on criminally negligent homicide), pet.
dism'd, 862 S.W.2d 615 (Tex. Crim. App. 1993).

 Nguyen argues that, in the present case, the evidence relevant to his culpable mental
state at the time of the shooting gives rise to more than one inference. At trial Nguyen was asked
what he thought the chances were of hitting any of the victims. He stated that "at the time,
ma'am, we didn't think there was any chance of hitting anyone at all because we just didn't think
about it. Like one in a million." He testified that he was shooting toward the direction of the
restaurant from which the victim had just exited. Nguyen further testified that they wanted the
victims to hear the rifle shots because "that's what scares people." Nguyen agreed that he was
fully aware of the danger of weapons, that he knew somebody could get killed, and that he was
fully aware of that when he went to that restaurant with a loaded gun. Nguyen testified that he
just was not thinking about it at that time because of the "heat of the moment."

 Even if evidence that the accused never willfully pointed a gun toward the victim
requires a charge on the lesser offense, Nguyen's testimony that he meant to both point and shoot
the gun in the direction of the victims to scare them conclusively shows awareness of the risk. 
Thus, a charge on criminally negligent homicide was not required. Based on the facts and
circumstances presented as evidence in this case, we conclude the court did not err in refusing to
submit a jury charge on criminally negligent homicide. Point of error four is overruled.

 In his fifth point of error, Nguyen asserts that the trial court erred in denying
appellant's request that spectators be ordered to remove large buttons portraying a color
photograph of the deceased while they were in the courtroom where the jurors could see the
buttons during the trial. Constitutional guarantees assure an accused in a criminal trial the right
to be tried by indifferent, impartial jurors whose verdict is based on the evidence developed at trial
rather than elicited by external influences. See U.S. Const. amend VI, XIV; Howard v. State, 941
S.W.2d 102, 117 (Tex. Crim. App. 1996).

 To prevail on an appeal claiming reversible error resulting from external juror
influence, an appellant must show either actual or inherent harm. Id. The test for actual influence
is whether jurors actually articulated being aware of a prejudicial effect. Id. There is no assertion
of actual influence in the present case. Inherent influence is shown by a reasonable probability
that the influence interfered with the jury's verdict and is a rarity reserved for extreme situations. 
Id. In Howard, the court concluded that the presence of twenty uniformed officers sitting in the
back of a courtroom with eighty other spectators during a trial of a defendant accused of
murdering an officer did not result in inherent prejudice. Id. at 118. The court noted that the
presence of the officers did not overwhelm the composition of the spectator gallery. Id. at 118
n.14.

 In the present case, defense counsel objected that seven individuals out of at least
twenty-five persons in the courtroom wore the buttons in question. Although defense counsel
stated, "It'll be clearly visible to the jurors," the record contains no indication where the
individuals were sitting, whether they were seated together, or if the jurors did in fact see the
buttons from where they were seated. It is impossible to tell from this record whether the buttons
even came close to being such an overwhelming presence in the courtroom that it was reasonably
probable they influenced the jury's verdict. (6) We conclude that the record here does not
demonstrate that the trial court erred in denying Nguyen's request to have the spectators remove
the buttons. Point of error five is overruled.


CONCLUSION

 Having overruled Nguyen's first, fourth and fifth points of error, we affirm the trial
court's judgment of conviction for murder. However, because we sustain point of error two, we
reverse the conviction for engaging in organized crime and order an acquittal as to that charge.



 

 J. Woodfin Jones, Justice

Before Justices Powers, Jones, and B. A. Smith

Affirmed in Part; Reversed and Rendered in Part

Filed: August 31, 1998

Publish
1. The State may anticipate variances in the proof by pleading alternative mental states in the
conjunctive when proof of any one of the mental states will support a guilty verdict. See Zanghetti
v. State, 618 S.W.2d 383, 387-88 (Tex. Crim. App. 1981); Belcher v. State, 962 S.W.2d 653,
656 n.1 (Tex. App.--Austin 1998, no pet.).
2. In Barber, the court also noted certain distinctions between criminal conspiracy and
organized crime. 764 S.W.2d at 234. One person alone cannot be found guilty of conspiracy,
but one person alone may be guilty of engaging in organized crime. Id. To engage in organized
crime, the offender must commit one or more of a list of proscribed acts in furtherance of the
combination (and he may be the only one to have done so), while in conspiracy all conspirators
are guilty if any one of them performs an overt act in pursuance of the agreement. Id. at 235.
3. The federal organized crime statute, 18 U.S.C.A. § 1961-68 (West 1984 & Supp. 1998),
uses the term "pattern of racketeering activity" Id. § 1962(1). A "pattern of racketeering
activity" requires at least two acts of racketeering activity within a 10-year period. Id. § 1961(5);
see H. J. Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 232 (1989). The Supreme Court
stated that there must be something to the offense beyond simply the number of predicate acts. 
Id. at 238. The court looked to both the common meaning of the word "pattern" as well as the
legislative history of the statute in determining that the factors of continuity plus relationship
(between the acts alleged) combine to form a pattern. Id. at 239.
4. In Barber, the court discussed some distinctions between criminal conspiracy and engaging
in organized crime, but did not distinguish conspiracy from a combination.
5. In Lucario, the court of appeals stated that "Webster's Third New World International
Dictionary (1976) defines 'carrying-on' as 'an instance of behavior.'" 677 S.W.2d at 693 (italics
in original). Another definition of "carrying-on" is "n, pl carryings-on: foolish, excited, or
improper behavior; also : an instance of such behavior <scandalous carryings-on>." Webster's
Third New International Dictionary 344 (Philip B. Gove ed., 1986) (italics and bold in original). 
In the Penal Code definition of "combination," however, the term "carrying on" (no hyphen) is
used, see Tex. Penal Code Ann. § 72.01(a), and it is used not as a noun, but as a transitive verb,
i.e., it has an object. It seems to us obvious that "carrying-on" (the noun) and "carrying on" (the
verb) are not interchangeable terms.
6. Nguyen describes several other cases involving outbursts or disruptions to a trial's
proceedings, but none of them demonstrate how the present case involves inherent influence. See
Landry v. State, 706 S.W.2d 105 (Tex. Crim. App. 1985) (commotion in trial audience caused
by deceased's widow fainting); Ashley v. State, 362 S.W.2d 847 (Tex. Crim. App. 1963)
(emotional verbal outburst by deceased's widow); Guse v. State, 260 S.W. 852 (Tex. Crim. App.
1923) (sheriff interrupted defendant's testimony to deny police had entrapped defendant);
Gutierrez v. State, 945 S.W.2d 287, 292 (Tex. App.--San Antonio 1997, no pet.) (unarmed police
cadets attended a trial involving neither a police officer victim or defendant).



CONCLUSION

 Having overruled Nguyen's first, fourth and fifth points of error, we affirm the trial
court's judgment of conviction for murder. However, because we sustain point of error two, we
reverse the conviction for engaging in organized crime and order an acquittal as to that charge.



 

 J. Woodfin Jones, Justice

Before Justices Powers, Jones, and B. A. Smith

Affirmed in Part; Reversed and Rendered in Part

Filed: August 31, 1998

Publish
1. The State may anticipate variances in the proof by pleading alternative mental states in the
conjunctive when proof of any one of the mental states will support a guilty verdict. See Zanghetti
v. State, 618 S.W.2d 383, 387-88 (Tex. Crim. App. 1981); Belcher v. State, 962 S.W.2d 653,
656 n.1 (Tex. App.--Austin 1998, no pet.).
2. In Barber, the court also noted certain distinctions between criminal conspiracy and
organized crime. 764 S.W.2d at 234. One person alone cannot be found guilty of conspiracy,
but one person alone may be guilty of engaging in organized crime. Id. To engage in organized
crime, t