NUMBER 13-03-742-CR



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG 


 


CHRISTOPHER LOZANO, Appellant,


v.


THE STATE OF TEXAS, Appellee.

 


On appeal from the 275th District Court of Hidalgo County, Texas.

 


DISSENTING MEMORANDUM OPINION


Before Chief Justice Valdez and Justices Rodriguez and Garza
Dissenting Memorandum Opinion by Chief Justice Valdez


 I respectfully dissent from the majority's opinion because I believe the evidence is
legally insufficient to support Lozano's conviction for murder under any of the charged
theories. 

I. APPLICABLE LAW

A. The Accomplice-Witness Rule

 Article 38.14 of the code of criminal procedure provides that "[a] conviction cannot
be had upon the testimony of an accomplice unless corroborated by other evidence
tending to connect the defendant with the offense committed; and the corroboration is not
sufficient if it merely shows the commission of the offense." Tex. Code Crim. Proc. Ann.
art. 38.14 (Vernon 2005). 

 Under the accomplice-witness rule, the jury may not consider the testimony of an
accomplice witness unless the jury finds first, that the witness is telling the truth, and
second, that other evidence corroborates the accomplice witness's testimony. Tran v.
State, 870 S.W.2d 654, 658 (Tex. App.-Houston [1st Dist.] 1994, pet. ref'd). The rule
reflects a legislative determination that accomplice testimony implicating another person
should be viewed with a measure of caution because accomplices often have incentives
to lie, such as to avoid punishment or shift blame to another person. Blake v. State, 971
S.W.2d 451, 454 (Tex. Crim. App. 1998). As a result, the testimony of an accomplice
called by the State, standing alone, cannot be the basis for a criminal conviction. Id.

 No precise rule has been formulated as to the amount of evidence required to
corroborate the testimony of accomplice witnesses, but the Texas Court of Criminal
Appeals has articulated some basic precepts for our assistance. Dowthitt, 931 S.W.2d at 
249; Gill, 873 S.W.2d at 48. Corroborative evidence is sufficient if it "tends to connect"
appellant to the offense. Munoz, 853 S.W.2d at 559. 

 The evidence used for corroboration does not need to be in itself sufficient to
establish guilt beyond a reasonable doubt. Gill, 873 S.W.2d at 48; Munoz, 853 S.W.2d at
559 ; Cox, 830 S.W.2d at 611. Nor must it directly link the accused to the commission of
the offense. Dowthitt, 931 S.W.2d at 249; Gill, 873 S.W.2d at 48; Munoz, 853 S.W.2d at
559; Cox, 830 S.W.2d at 611. 

 While the accused's mere presence in the company of the accomplice or informant
before, during, and after the commission of the offense is insufficient by itself to
corroborate accomplice testimony, evidence of such presence, coupled with other
suspicious circumstances, may tend to connect the accused to the offense. See Dowthitt,
931 S.W.2d at 249; Gill, 873 S.W.2d at 49; Cox, 830 S.W.2d at 611. Even apparently
insignificant incriminating circumstances may sometimes afford satisfactory evidence of
corroboration. See Dowthitt, 931 S.W.2d at 249; Munoz, 853 S.W.2d at 559. 

B. Application of the Accomplice-Witness Rule

 I disagree with how the majority applies the accomplice witness rule to the offenses
contained in the jury charge. The jury was charged with the following offenses in the
following order: (1) intentional murder, (2) murder as a criminally responsible party, and
(3) murder in furtherance of a conspiracy to commit another felony. Tex. Penal Code Ann.
§ §19.02(b)(1), 7.01(a), 7.02(b) (Vernon 2003). The majority opinion applies the
accomplice-witness rule's tends-to-connect test at the outset. It uses Barnum's DNA found
on Lozano's shoe and the ribbon found at Lozano's aunt's house to connect Lozano to
Barnum's murder. The majority then analyzes the sufficiency of the evidence for the last
charged theory - murder in furtherance of a conspiracy to commit another felony - using
accomplice statements taken from Adams and Macias. The tends-to-connect evidence
used by the majority connects Lozano to Barnum's murder only in that it places him at the
scene of the crime. The majority's tends-to-connect evidence does not speak to the theory
used to sustain Lozano's conviction.

 I would apply the accomplice-witness rule's tends-to-connect test for each of the
charged theories. I would begin the sufficiency of the evidence analysis with the first
charged theory and then analyze the subsequent theories in sequential order. By my
analysis, the evidence is legally insufficient in the instant case.

II. ANALYSIS

1. Murder as a Principal Party

 I begin my analysis with the charge of intentional murder. A person commits the
offense of murder if he intentionally or knowingly causes the death of an individual. Id. §
19.02(b)(1). None of the defendants' statements, nor Macias's in-court testimony contend
that Lozano strangled Barnum. All three statements and Macias's in-court testimony claim
that Macias was the strangler. Although the ribbon was found at Lozano's aunt's house,
a forensic examination of the ribbon reveals only Barnum's blood and Macias's DNA. 
Thus, forensic evidence corroborates the defendant's statements that Macias was the
strangler. The only other evidence tending to connect Lozano to Barnum's murder is the
presence of Barnum's blood on his shoes, which places Lozano at the scene but does not
speak to whether he was the one who strangled Barnum. Therefore, I would hold that the
evidence is legally insufficient to support a murder conviction based on Lozano acting as
a principal.

2. Murder as a Criminally Responsible Party

 A person is criminally responsible as a party to an offense if the offense is
committed by the conduct of another for which he is criminally responsible. Tex. Penal
Code Ann. § 7.01(a). A person is criminally responsible for an offense committed by the
conduct of another if acting with intent to promote or assist the commission of the offense,
he solicits, encourages, directs, aids, or attempts to aid the other person to commit the
offense. Id. at § 7.02(b). 

 When an appellant raises a legal sufficiency complaint as an offender convicted as
a party, the evidence will be held sufficient to convict under the law of parties where the
defendant is physically present at the commission of the offense and encourages its
commission by words or other agreement. Ransom v. State, 920 S.W.2d 288, 302 (Tex.
Crim. App. 1994); Cordova v. State, 698 S.W.2d 107, 111 (Tex. Crim. App. 1985). "In
determining whether the accused participated as a party, the court may look to events
occurring before, during and after the commission of the offense, and may rely on actions
of the defendant which show an understanding and common design to do the prohibited
act." Cordova, 698 S.W.2d at 111. Circumstantial evidence may be used to prove party
status. Id.

 However, the evidence must show that at the time of the offense, the parties were
acting together, each contributing some part towards the execution of their common
purpose. Brooks v. State, 580 S.W.2d 825, 831 (Tex. Crim. App. [Panel Op.] 1979);
Armstead v. State, 977 S.W.2d 791, 797 (Tex. App.-Fort Worth 1998, pet. ref'd). For a
defendant to be considered a party to an offense, he must commit some culpable act
before or during the commission of the offense. See Morrison v. State, 608 S.W.2d 233,
235 (Tex. Crim. App. [Panel Op.] 1980) (emphasis added). 

 As already noted, in conducting a sufficiency review under the accomplice-witness
rule, we must eliminate accomplice testimony from consideration and then examine the
remaining portions of the record to see if there is any evidence that tends to connect the
accused to the commission of the crime. Solomon v. State, 49 S.W.3d 356, 361 (Tex.
Crim. App. 2001); see also Tex. Code Crim. Proc. Ann. art. 38.14. 

1. Acts Committed Before the Murder

 I would begin the legal sufficiency analysis of the State's murder as a criminally
responsible party theory by searching for any acts that Lozano may have committed before
the murder. See Morrison, 608 S.W.2d at 235 (holding that for a defendant to be
considered a party to an offense, he must commit some culpable act before or during the
commission of the offense). J.R. described a "murder plan" hatched a week before the
strangulation. However, J.R. could not specify who agreed to the murder plot. Additionally,
the jury could have been drawn to (1) Macias's in-court testimony that he relayed Adams's
murder plans to Lozano, began leaving the apartment complex, but turned back to
Barnum's apartment when Lozano said that it is was too late to go to a friend's house; (2)
Macias's statement that he relayed Adams's murder plans and Lozano replied, "just go for
it;" or (3) Adams's statement that Lozano relayed Macias's murder plans to her and that
he thought Macias was serious but that he "did not think that [Macias] had the guts to do
it." 

 Macias's in-court testimony, Macias's statement, and Adams' statement, constitute
accomplice testimony and must be corroborated by other evidence tending to connect
Lozano to Barnum's murder as a criminally responsible party. See Dowthitt, 931 S.W.2d
at 249; Gill, 873 S.W.2d at 49. 

 The only "other evidence" of Lozano's participation in the planning of Barnum's
murder is a neighbor claiming to see all three defendants outside of Barnum's apartment
on the evening in question. Such testimony, like the forensic evidence, places Lozano at
the scene. In the instant case, to satisfy a legal sufficiency analysis the neighbor's
testimony must amount to a suspicious circumstance tending to connect the accused to
the offense. See Dowthitt, 931 S.W.2d at 249; Gill, 873 S.W.2d at 49. It rises to such a
level only if the jury speculated as to the conversation that took place. See Hooper v.
State, 214 S.W.3d 9, 15 (Tex. Crim. App. 2007) (noting that juries are not permitted to
come to conclusions based on mere speculation or factually unsupported inferences or
presumptions). 

 Accordingly, I would eliminate Macias's in-court testimony, Macias's statement, and
Adams' statement from consideration because there is no "other evidence" corroborating
their accomplice testimony. Solomon, 49 S.W.3d at 361. There is, therefore, legally
insufficient evidence establishing Lozano's liability as a criminally responsible party before
Barnum's murder.

2. Acts Committed During the Murder

 I would then try to find any acts that Lozano committed during the murder. See
Morrison, 608 S.W.2d at 235 (holding that for a defendant to be considered a party to an
offense, he must commit some culpable act before or during the commission of the
offense). The testimony of Lozano smiling during the offense and holding the door for
Macias to move Barnum's body is found in Macias's statement and in-court testimony. 
This testimony must be corroborated by some other evidence tending to connect Lozano
to Barnum's murder as a criminally responsible party. Munoz, 853 S.W.2d at 559; see also
Tex. Code Crim. Proc. Ann. art. 38.14. Barnum's blood found on Lozano's shoe and
shoelace place him at the scene of the crime but do not tend to connect him to holding the
door or smiling during the strangulation.

3. Acts Committed After the Murder

 The final step in determining whether the evidence is legally sufficient to convict
Lozano for murder as a criminally responsible party is to examine events after the murder. 
Cordova, 698 S.W.2d at 111. The State relies heavily on evidence of Lozano taking
Barnum's purse, stealing Barnum's car, fleeing with Macias and Adams, looking nervous
at the convenience store, and concealing the ribbon at his aunt's house as proof of
Lozano's guilt. 

 Acts done after the offense is completed do not make the accused a party to the
offense. Morrison v. State, 608 S.W.2d 233, 235 (Tex. Crim. App. 1980); Guillory v. State,
877 S.W.2d 71, 74 (Tex. App.-Houston [1st Dist.] 1994, pet. ref'd). The evidence must
show that at the time of the commission of the offense, the parties were acting together,
each doing some part of the common design. Brooks, 580 S.W.2d at 831. If the evidence
shows mere presence of an accused at the scene of the offense, or even his flight from the
scene, then it is insufficient to sustain a conviction as a party to the offense. Valdez v.
State, 623 S.W.2d 317, 321 (Tex. Crim. App. 1979); Scott v. State, 946 S.W.2d 166, 168
(Tex. App.-Austin 1997, pet. ref'd).

 None of the post-murder events that Lozano participated in constitute some
evidence of an understanding or common design to murder Barnum. Cordova, 698
S.W.2d at 111. According to Adams' statement, she ordered Lozano to retrieve Barnum's
purse from her bedroom after the strangulation; the purse was found in the car. Macias'
in-court testimony was that he left the scene with the ribbon, tried giving the ribbon to
Adams while the three were in the back of a squad car, and eventually gave it to Lozano;
the ribbon was found in Lozano's aunt's house. There is no evidence to believe that the
attempts to conceal the crime were hatched before or during its commission. The
evidence establishes purely presence and flight.

 The remaining relevant and appropriate evidence establishes that Lozano was
outside of the apartment when the strangulation began, entered the apartment sometime
during the strangulation, and told Macias to stop. After the strangulation, Lozano gathered
items from Barnum's apartment, including her purse, and fled with Macias and Adams in
Barnum's car. At 10:30 p.m. a neighbor saw Lozano, Adams, and Macias near Barnum's
apartment. Forensic evidence establishes that the shoes Lozano was wearing the night
of the murder contained Barnum's blood and the murder weapon, a ribbon, was found at
Lozano's aunt's house. There was also non-accomplice testimony by J.R. that days before
the murder occurred Lozano was present when it was suggested that Barnum be poisoned.

 Assuming Lozano acted with the intent to promote Barnum's murder, the relevant
record before us fails to present any evidence showing how Lozano solicited, encouraged,
directed, aided, or attempted to aid either Macias or Adams in the commission of the
offense. Tex. Pen. Code Ann. § 7.02(b). In light of Lozano's own admissions and the
circumstantial evidence, a rational jury could not have found beyond a reasonable doubt
that Lozano solicited, encouraged, directed, aided, or attempted to aid in Barnum's murder. 
I would hold that this evidence is legally insufficient to support a murder conviction based
on Lozano being criminally responsible for the conduct of Macias or Adams.

3. Murder In Furtherance of a Conspiracy to Commit a Felony

 I will next analyze whether the evidence is sufficient to support a conviction for
murder in furtherance of a conspiracy to commit a felony. If, in the attempt to carry out a
conspiracy to commit one felony, another felony is committed by one of the conspirators,
all conspirators are guilty of the felony actually committed, though having no intent to
commit it, if the offense was committed in furtherance of the unlawful purpose and was one
that should have been anticipated as a result of the carrying out of the conspiracy. Id. 

 Lozano contends no rational jury could have found or inferred that he should have
anticipated what Macias and Adams did. The State argues it presented legally sufficient
evidence showing Lozano should have anticipated the murder as a result of the agreement
to steal Barnum's car. See Queen v. State, 940 S.W.2d 781, 788 (Tex. App.-Austin 1997,
pet. ref'd). Specifically, the State points to Lozano's participation in the plan to steal
Barnum's car, his knowledge of the murder plan hatched by Macias or Adams the evening
of the murder, and his remark to Macias that it was too late to go to a friend's house
moments before Macias entered the apartment. 

 The majority opinion uses Lozano's presence at the scene of Barnum's murder to
support the admission of accomplice-witness statements, which includes conversations
between Adams and Macias minutes before Barnum's murder. These conversations, the
majority argues, paint Lozano as an active participant in the murder plot. I fail to see how. 

 The majority's analysis is flawed in two important ways. First, it includes
uncorroborated accomplice testimony in it's legal sufficiency analysis. See Tex. Code
Crim. Proc. Ann. art. 38.14. Second, the conversations had between Adams and Macias
in the moments before Barnum's murder do not show that Lozano actively participated in
either the murder plot or the stealing of Barnum's car. The statements alluding to
murdering Barnum in furtherance of the conspiracy to steal her car were made between
Macias and Adams.

 Additionally, the majority relies on a prior murder plot to establish that Lozano
should have anticipated Barnum's murder when the auto theft conspiracy began. I believe
that the evidence is legally insufficient to establish beyond a reasonable doubt that Lozano
should have anticipated Barnum's murder when the auto theft plot was first hatched. 

 In Queen a robbery conspiracy ended in murder. Queen, 940 S.W.2d at 781. One
of the conspirators appealed the legal sufficiency of his murder conviction. Id. The
appellant and three co-conspirators noticed an individual leaving a grocery store with a
large sum of money and decided to rob him. Id. They followed the victim to his apartment,
gained entry by offering drugs, and proceeded to beat the victim. Id. During the beating,
the appellant searched the victim's pockets for money, took it, and left. After the appellant
left, two men continued pummeling the victim, who died from intracranial bleeding due to
multiple blows to the head. Id. In overruling the appellant's legal sufficiency issue, the
Queen Court held that evidence of (1) gross disparities in strength and stamina between
the four conspirators and their intended victim, (2) one of the conspirators reputation for
violence, and (3) the viciousness of the attack was sufficient enough for a jury to rationally
conclude beyond a reasonable doubt that murder was an offense that the appellant should
have anticipated as a result of carrying out the agreement to commit robbery. Id. at 788.

 During the guilt-innocence phase of trial there was no testimony showing that the
defendants had a propensity for violence or acted violently in the past. Moreover, evidence
that Lozano should have anticipated murder as a result of the conspiracy to steal Barnum's
automobile is scant and tenuous. J.R. testified about a conversation she had with the
defendants about killing Barnum, but could not specify who all agreed to the plot. J.R. also
testified about an attempt to poison Barnum with roach poison. The "roach poison plan"
was aborted when the soda was thrown away. Physical evidence of the plot exists in a can
of roach poison found in the apartment by crime scene investigators. 

 The evidence shows troubled teens engaging in foolish behavior, but it does not
establish beyond a reasonable doubt that Lozano should have anticipated murder as a
result of a conspiracy to steal Barnum's car. The applicable legal standard is "should have
anticipated" not clairvoyance. I would hold that the evidence is legally insufficient to
support a conviction for murder in furtherance of a conspiracy. 

III. CONCLUSION

 I respectfully dissent from the majority's opinion because I believe that the evidence
is legally insufficient to support Lozano's murder conviction. I would reverse the trial court's
judgment and render an acquittal.

 ROGELIO VALDEZ

 Chief Justice

Do not publish. 

Tex. R. App. P. 47.2(b).


Dissenting Memorandum Opinion 

delivered and filed this the 30th day of August, 2007.