

**NUMBER 13-06-00540-CR**

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

**JUAN ANTONIO VASQUEZ,**                                                    **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                                    **Appellee.**

**On appeal from the 206th District Court of Hidalgo County, Texas.**

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Yañez and Benavides
Memorandum Opinion by Justice Benavides**

Appellant Juan Antonio Vasquez appeals his convictions for murder and attempted murder. *See* TEX. PENAL CODE ANN. §§ 15.01(a), 19.02(b)(1) (Vernon 2003). After a jury trial, Vasquez was convicted as a party to the murder of Miguel Elizondo[1] and the

---

[1] Miguel was also known as "Big Mike."

attempted murder of Miguel's wife, Marissa Elizondo.[2] After Vasquez pleaded "true" to an enhancement of a prior felony conviction, the jury sentenced Vasquez to twenty-five years' imprisonment for murder and fifteen years' imprisonment for attempted murder, with the sentences running concurrently. Additionally, the trial court ordered Vasquez to pay restitution in the amount of $20,608.93. By seven issues, Vasquez argues that the evidence is legally and factually insufficient to support the verdict, that the jury charge allowed a non-unanimous verdict, and that the trial court erred by ordering restitution. We affirm.

## I. BACKGROUND

Vasquez was tried and convicted for murder and attempted murder under the law of parties, not as a direct participant in the murder or the attempted murder. The facts surrounding the actual murder and attempted murder are largely undisputed. Vasquez, however, disputes that he was a blameworthy participant based on his conduct before the murder. Specifically, his arguments on appeal attack the reliability of a statement that he gave to the police implicating himself in the murders, discrepancies between that statement and the ballistic evidence admitted at trial, and his lack of knowledge of any plan to murder Marissa. Additionally, Vasquez challenges the restitution ordered by the court.

### A. The Murder and Attempted Murder

Marissa and Miguel were originally from Dallas but had moved to San Juan in late April or early May 2003. According to Marissa,[3] on May 19, 2003, the couple were

---

[2] The indictment spelled Mrs. Elizondo's first name as "Marisa," but the court reporter consistently spelled her name "Marissa." We will refer to her using the latter spelling.

[3] The following facts are drawn from Marissa's testimony at trial and from testimony by the officers to whom she gave a statement on the night of the murder.

watching television in their home in San Juan. At around 10:00 p.m. that night, a car with two male passengers honked its horn outside the house. Marissa told Miguel that his friends were outside because she recognized the car.

Miguel recognized the car's occupant as his friend, ultimately identified as Juan Pablo Hinojosa. Miguel went outside to talk to Hinojosa, and then they both came inside the house. Marissa had seen Hinojosa before and knew him as "Gordo." Miguel and Hinojosa sat in the kitchen, had something to drink, and talked. Miguel asked Marissa for a towel, and Marissa obliged. Miguel and Hinojosa then went outside again.

Miguel came to the door and asked Marissa to make a phone call to check on one of his friends. As Miguel was talking to her at the door, Marissa heard gunshots and saw Miguel fall to the floor. She saw blood coming from his head.

Marissa began to run towards the back door of the house. A second man, later identified as Benjamin Piedra,[4] entered the house and chased after Marissa. Marissa claimed she heard Piedra shoot at her twice. She hid behind her kitchen table. Piedra caught up with her, pointed the gun at her, and tried to fire it, but the gun jammed. Piedra ran to the living area, and Marissa was able to escape out the back door to her neighbor's

---

[4] Texas Department of Public Safety Sergeant Alfredo Barrera, Jr. testified that he conducted a traffic stop on May 3, 2003. The passengers in the vehicle he stopped were not wearing seat belts. After talking to Sergeant Barrera, the passenger of the vehicle fled through a cornfield. Sergeant Barrera arrested the driver, but the passenger was not apprehended at that time. The driver was Juan Pablo Hinojosa. Sergeant Barrera videotaped the traffic stop. Later, the passenger was identified from the video as Benjamin Piedra.

On the night of Miguel's shooting, Marissa did not know Hinojosa or Piedra by their actual names. Marissa knew, however, that one of the shooters was called "Gordo," and although she did not know his name, she testified that Piedra had helped her move from Dallas to San Juan.

After the shooting, Marissa moved to Dallas. San Juan Police Officer Joe Martinez testified that he traveled to Dallas and met Marissa there at the FBI office. There, he showed Marissa a photo line up and the video of Sergeant Barrera's traffic stop. Marissa testified that she identified one of the men in the lineup as Gordo. She further identified one of the men on the video as the man who shot at her. San Juan Police Sergeant Raymundo Casarez testified that the investigation revealed that Hinojosa and Piedra were the shooters in the incident.

3

house, where she called the police.

**B. Vasquez's Involvement**

Javier Soliz testified that he is from Dallas, Texas, where he was a member of a gang called the "Texas Syndicate." Soliz testified that to become a "prospect" for membership in the gang, the prospective gang member has to "take care of business to kill someone." He knew Miguel as a fellow member of the gang.

Soliz testified that, prior to Miguel's move to San Juan, Miguel and a man named Nachillo were conducting a drug deal in Dallas and were supposed to "jack" the two men with whom they were dealing. One of the men involved in the drug deal shot Nachillo, and Miguel then killed the two men. Nachillo was the brother of one of Texas Syndicate's "lieutenants," which he described as a high-ranking member of the gang. The lieutenant believed that Miguel could have saved Nachillo's life, but did not, and that Miguel had taken the money that was to be used in the drug deal. Thus, Soliz testified, the gang put a hit on Miguel.

Soliz stated that the decision to kill Miguel was made by the Texas Syndicate at a meeting in Dallas that Soliz attended. However, there was "too much heat" in Dallas, so the gang sent Miguel to the Rio Grande Valley to live. Soliz said that a man named "Gordo" was supposed to carry out the hit.

Soliz stated that he met Vasquez in 2001 or 2002, and Vasquez was also a member of the Texas Syndicate. At the time Soliz met Vasquez, Vasquez was a high-ranking member of the gang. Soliz spoke to Vasquez after the murder, and he claimed that Vasquez asked if the Dallas members were "going to pay to cleanup the mess, you know, for the sheet rock that was damaged and blood that was, you know, the cleaning people

4

he had to get to go in there, if we were going to pitch in to pay for that."

Texas Ranger Israel Pacheco testified that he assisted with the investigation of Miguel's death. He obtained a warrant for Vasquez's arrest, and he first met Vasquez at his arraignment on February 4, 2005. After the arraignment, Ranger Pacheco and Hidalgo County Sheriff's Investigator Noe Canales met with Vasquez at Ranger Pacheco's office.

Ranger Pacheco tape recorded the statement. He testified that the tape recording was prepared on a recording device capable of making accurate recordings, and he operated the machine. He testified that the recording was an accurate copy of the conversation and had not been altered in any manner. The State then offered the tape-recorded statement into evidence.

Defense counsel objected that the copy was not the best evidence of the statement. The trial court allowed the State to explore the issue with Ranger Pacheco, who testified that the original still existed and was located on the hard drive of his computer. However, on further questioning, Ranger Pacheco explained that the original recording was made on a digital recorder. The digital recorder was then hooked into a docking device that was connected to Ranger Pacheco's computer. He testified that he downloaded the conversation from the digital recorder onto the computer, where it was stored in the computer's hard drive. Then, from the computer, he made a copy by downloading the conversation from the hard drive onto a compact disk. He stated that there was no way to alter the conversation that was recorded. He testified that once a conversation is downloaded from the digital recorder onto the computer, the conversation is erased off of the digital recorder so that the recorder can be used again. Defense counsel again urged its best evidence objection, which the trial court overruled.

5

Vasquez's statement was then admitted into evidence. Ranger Pacheco informed Vasquez of his constitutional rights. Vasquez indicated that he understood his rights and agreed to give a statement. In the statement, Vasquez admitted that he received a call from a fellow gang member in Houston that said that Miguel had "muleta's."[5] Vasquez was called because he was in charge of the Texas Syndicate at the time. Later, he clarified that Marcelino Hernandez, nicknamed "Mars," actually received the call from Houston, and Mars then relayed the instructions to Vasquez. Vasquez stated that the gang had decided that Miguel had to be killed because Miguel had killed someone in Dallas. The members of the Texas Syndicate in the Valley then held a meeting at Vasquez's house to discuss the hit on Miguel. At the meeting, Hinojosa volunteered to do the hit.

During the interview, Vasquez admitted that he provided Hinojosa with a weapon to be used in the murder:

RANGER PACHECO: Did you provide the weapon that—that was used in the murder of "Big Mike", Miguel Elizondo?

THE DEFENDANT: Yes, sir.

RANGER PACHECO: You gave that—what kind of gun did you give to—

THE DEFENDANT: It was a .380.

RANGER PACHECO: And you gave it to who?

THE DEFENDANT: To Juan Pablo Hinojosa.

RANGER PACHECO: And did you give it to him on the same day of the murder or—

THE DEFENDANT: No, I—I just gave it to him that—you know,

---

[5] Soliz testified that a "muleta" is "an ex-member" of the Texas Syndicate, and a hit is ordered to kill that person. Defense counsel did not object to Soliz's translation of the term.

before that—before that happened.

. . . .

RANGER PACHECO: At the time that you gave the .380 to Juan Pablo Hinojosa, what did you tell him what he had to do?

THE DEFENDANT: I didn't—you know, for him—he, you know, what he was going to do. Take care of business.

Vasquez denied that the plan to kill Miguel included killing his wife, Marissa, and he denied any knowledge that Piedra had tried to kill Marissa:

RANGER PACHECO: Was the plan also to kill his wife?

THE DEFENDANT: No.

RANGER PACHECO: Who came up with that plan?

THE DEFENDANT: I don't know.

RANGER PACHECO: Did Juan Pablo Hinojosa come up with that?

THE DEFENDANT: I believe that's of his own will, you know.

RANGER PACHECO: Well, why would he do that?

THE DEFENDANT: I don't know. I sure don't know about that.

RANGER PACHECO: Does he suffer any consequences from the Texas Syndicate or from you if he kills the wife? Are there any consequences for that?

THE DEFENDANT: I guess so.

RANGER PACHECO: What would be the consequences by him killing—

THE DEFENDANT: That, you know, he would be a muleta.

RANGER PACHECO: There would be a muleta against him?

THE DEFENDANT: Of course, because the—the—the hit was not for

7

|                     |                                                      |
|---------------------|------------------------------------------------------|
|                     | his wife, you know.                                  |
| RANGER PACHECO:     | You sure about that?                                 |
| THE DEFENDANT:      | Yes, sir.                                            |
| RANGER PACHECO:     | Because the other guy who was with Juan Pablo, he tried to kill the wife? |
| THE DEFENDANT:      | Oh, yeah?                                            |
| RANGER PACHECO:     | You didn't know about that?                          |
| THE DEFENDANT:      | No, I didn't know.                                   |

Vasquez stated that after the hit, Hinojosa told Mars that it had been completed, and Mars then told Vasquez. Vasquez stated that he did not have any further contact with Hinojosa.

On cross-examination, defense counsel questioned Ranger Pacheco about the reliability of the recording, asking whether the recording could be edited. Ranger Pacheco testified that with the right training and equipment, he "imagined" that a person could edit the digital recording. On redirect, however, Ranger Pacheco testified that he did not edit the recording.

The State also called Officer Noe Canales from the Hidalgo County Sheriff's Office. Officer Canales testified that he was present when Ranger Pacheco interviewed Vasquez. The State played Vasquez's recorded statement again for the jury, and then asked Officer Canales if the recording was a fair and accurate depiction of the conversation that he heard. Officer Canales confirmed the recording was accurate.

The defense called William Ray Yost to testify as an expert witness about whether a digital recording can be manipulated. Yost stated that he examined the digital recorder

8

used by Ranger Pacheco to record Vasquez's statement. Yost testified that when the digital recording is transferred from the recorder to a computer hard drive, the original recording remains on the recorder, and a copy is transferred to the computer in a different format.

He testified that there are hundreds of programs that are capable of editing these types of recordings, and they are easy to use. Yost testified that he examined Ranger Pacheco's computer to determine if there were programs that would allow him to edit the recording, and Yost did not see any. However, he noted that all computers with Windows operating systems come equipped with Microsoft Media Player which, depending on how it is upgraded, is capable of editing the recording. Yost did not indicate whether Ranger Pacheco's version of Microsoft Media Player had been upgraded so that it could edit a digital recording. Yost explained that after a file has been edited, a person would not be able to tell it had been edited.

## C. Ballistics Evidence

The weapons used in the attack were never recovered. Ballistics tests were run on several pieces of evidence recovered from the residence. Officer Homer Alafa with the San Juan Police Department testified that he investigated the crime scene. Officer Alafa found a bullet hole in the window of the front door and another hole by the back door. However, he found only one bullet fragment in a hole in the entertainment center by the stereo. Officer Alafa also testified that he found three live rounds that had not been fired: two in the living room of the residence and one by the back door. He sent the ammunition to Officer Jose Omar Padilla, the lead investigator. Officer Alafa explained that he did not know if the live rounds were used in the murder, nor did he know when the bullet holes in

9

the house were made. He further explained that there was no way to match the bullet fragment to a weapon.

Officer Padilla testified that he attended Miguel's autopsy and collected two bullets that were found inside Miguel's head. He submitted those bullets, along with the bullet fragment and the live rounds recovered at the residence, to the department of public safety's crime lab. Officer Padilla explained that the crime lab would test the bullets to try to match them to a murder weapon. He never reviewed the results of the crime lab's tests.

Robert Hitchcox testified that he is a forensic firearms and tool marks examiner with the Texas Department of Public Safety Crime Laboratory in McAllen, Texas. Hitchcox identified the live rounds recovered from the home as unfired nine millimeter Luger caliber cartridges. Hitchcox determined that one fragment recovered from the house and the two bullets recovered from Miguel's body were fired from the same weapon. He testified that the two bullets recovered from the body, and one fragment recovered from the residence, were consistent with the projectiles of a .38 special and .357 magnum caliber weapon. On cross-examination, he testified that he could not precisely say which firearm was used to commit the offense. Rather, he could only say what was the most probable weapon to fit the ammunition.

Hitchcox explained that nine millimeter Luger bullets have the same diameter as a .357 magnum and .38 caliber bullet. But, he explained, a nine millimeter Luger cartridge will not chamber and fire in a .357 magnum or a .38 special firearm, and it can only be used in a nine millimeter weapon. Hitchcox further testified that if a nine millimeter Luger bullet is used in a weapon, the cartridge would eject at the scene, whereas .38 special and .357 Magnum caliber bullet cartridges would not be expelled. He stated that if a weapon

10

were to misfire, a live round could be ejected in order to load another cartridge.

Hitchcox testified that in his experience, on numerous occasions, officers have submitted what they believed was a .380 weapon for testing, but in fact, the weapon was a nine millimeter. He explained that not everyone calls a .380 automatic weapon by its name, but in fact, they are frequently referred to as "nine millimeter curves," "9 millimeter quarto," and "nine millimeter Browning."

## D.    Closing Arguments

During closing argument, defense counsel argued that the weapon that Vasquez admitted to giving to Hinojosa was a .380 semi-automatic weapon that, if fired, would have expelled bullet casings. Defense counsel pointed out that no casings fitting a .380 were found at the residence, and the ballistics evidence showed that a .380 was not used to kill Miguel. In rebuttal, the State explained the discrepancy as follows:

> Let's talk about the .380 for a minute. Defense counsel's right, Hitchcox, through his examination, did not find anything to link a .380. And there's three different ways can you [sic] look at it; first of all, either when the Defendant gave the statement he really believed the weapon he was handing over to Juan Pablo Hinojosa was a .380. But maybe Juan Pablo Hinojosa didn't use that in the commission of the offense. Well, ladies and gentlemen, mistake of fact is no defense. And in the jury charge in Count One it says: Did then and there acting with the intent to promote or assist the commission of the offense he solicited, encouraged, directed, aided or attempted to aid Juan Pablo Hinojosa to commit the offense by providing a firearm, then you will find the Defendant Juan Antonio Vasquez guilty of the offense of murder as charged in the indictment.

> If the Defendant—if you find the Defendant solicited, encouraged, directed, aided or attempted to aid Juan Pablo Hinojosa by providing a firearm, that is enough. It doesn't have to be the one that was used, but providing a firearm. So if the Defendant when he gave his statement did give a .380 but Juan Pablo Hinojosa changed it up and used a different weapon, you can still find the Defendant guilty of murder under the law of parties.

> Now maybe he says a .380 because a .380 looks similar to the nine millimeter and maybe he doesn't know the difference. And ladies and

11

gentlemen, again, if he's mistaken—and we do know a nine millimeter was used because there were live rounds at the scene—you can also find him guilty because he provided a weapon and that was with the intent to promote or assist the commission of the offense. He was encouraging, soliciting, directing or aiding or attempting to aid Juan Pablo Hinojosa in committing the offense.

Or, ladies and gentlemen, again, it's up to you to decide the credibility. And I would submit to you that maybe the Defendant, again knowing a year and a half afterwards what weapon he provided, maybe he's trying to minimize his involvement by saying a different weapon was used than the one that he knows was used because he knows that ballistics won't match it back up. I would submit to you that you can think about that.

Defense counsel did not object to the assistant district attorney's argument.

## E.   Punishment Phase

After hearing the above testimony and arguments, the jury found Vasquez guilty of both counts. Vasquez elected to have the jury assess punishment. The court began the punishment phase of the trial the same day the guilty verdict was rendered, on May 16, 2006. The State introduced a prior felony for enhancement purposes, and Vasquez pleaded "true" to the enhancement.

The jury heard testimony from Ricardo Rodriguez, a probation officer; Maria Oldfield, Miguel's younger sister; and Sylvia Vidal, Vasquez's common law wife. Rodriguez testified about Vasquez's prior conviction, and Oldfield testified about Miguel's family. Vidal testified about Vasquez's home life. None of these witnesses testified about funeral expenses incurred by Miguel's estate or his family because of his death. The jury considered the testimony and assessed punishment. At no time during the punishment phase of trial before the jury did the State mention restitution.

After the jury reached its sentencing verdict and was excused, on May 22, 2006, Vasquez appeared for formal sentencing. Defense counsel informed the trial court that

12

earlier that morning, the State had shown him documents regarding restitution. The State then told the court that it had received faxes from Miguel's family members evidencing bills and payments for the burial and funeral expenses and requested restitution for those amounts. Defense counsel objected that the faxes were hearsay, and there was no testimony to the court as to the actual amount of restitution. The State countered that hearsay statements, such as those contained in a pre-sentence investigation report, could be properly considered by the court in determining the amount of restitution. The State informed the court that the "victim has just, within the last week, applied with crime victims to—for reimbursement. The reimbursement on burial expenses does not exceed $4,500." The assistant district attorney then explained:

> It would be an abuse of discretion standard if the court were to order—or not order restitution. The appellate court will look at your ruling based on the court's abuse of discretion on what we presented. We believe it would be an abuse of the court in making a factual finding that this is the amount of restitution due and owing.

Defense counsel stated that he was standing by his objection, and the court responded, "Okay, very good." The court then pronounced the sentence and ordered restitution in the amount of $20,608.93. Vasquez filed a motion for new trial, but he did not attack the restitution order.

## II. LEGAL AND FACTUAL SUFFICIENCY

By his first and third issues, Vasquez challenges the legal and factual sufficiency of the evidence supporting his conviction for murder, as alleged in Count 1 of the indictment. By his second, fourth, and fifth issues, he challenges the legal and factual sufficiency of the evidence supporting his conviction for attempted murder, as alleged in Count 2 of the

13

indictment.[6]

## A.    Standards of Review and Applicable Law

"In reviewing the legal sufficiency of the evidence, this Court looks at all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt." *Vodochodsky v. State*, 158 S.W.3d 502, 509 (Tex. Crim. App. 2005) (citing *Jackson v. Virginia*, 443 U.S. 307, 318 (1979)).  When conducting a legal sufficiency review, we look to the totality of the circumstances.  *Id.*

"In a factual sufficiency review, we view all the evidence in a neutral light, both for and against the finding, and set aside the verdict if 'proof of guilt is so obviously weak as to undermine confidence in the jury's determination, or the proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof.'" *Id.* at 510 (quoting *Johnson v. State*, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000)).  We must consider all of the evidence weighed by the jury, "comparing the evidence which tends to prove the existence of the elemental fact in dispute to the evidence which tends to disprove it."  *Id.*  While we are authorized to disagree with the jury's determination even if there is evidence to support the verdict, we must nevertheless avoid substituting our judgment for that of the fact-finder. *Id.*

Both legal and factual sufficiency of the evidence must be measured in terms of the

---

[6] Vasquez's legal sufficiency arguments include a lengthy discussion of his due process right under the Fourteenth Amendment to the United States Constitution to be free from a conviction based on insufficient evidence.  *See* U.S. CONST. amend. XIV.  However, Vasquez's due process arguments do not create a separate and distinct legal sufficiency standard.  *See Jackson v. Virginia*, 443 U.S. 307, 317-19 (1979). Accordingly, we will review his legal and factual sufficiency arguments under the typical standards of review applied to these types of arguments.

14

"elements of the offense as defined by the hypothetically correct jury charge for the case." *See Curry v. State*, 30 S.W.3d 394, 404 (Tex. Crim. App. 2000); *Malik v. State*, 953 S.W.2d 234, 239-40 (Tex. Crim. App. 1997). "Such a charge would be one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Malik*, 953 S.W.2d at 240. Review of the sufficiency of the evidence under a hypothetically correct jury charge can include the law of parties, even if the law of parties is not included in the charge. *Garza Vega v. State*, 267 S.W.3d 912, 915-16 (Tex. Crim. App. 2008).

A hypothetically correct jury charge in this case would authorize a conviction for murder if Vasquez intentionally or knowingly caused Miguel's death. TEX. PEN. CODE ANN. § 19.02(b)(1). The law of parties is also raised by the evidence in this case, which would allow a conviction for Miguel's murder if Vasquez, acting with intent to promote or assist the commission of the offense, solicited, encouraged, directed, aided, or attempted to aid another person to murder Miguel. *Id.* § 7.02(a)(2) (Vernon 2008). In determining whether a defendant is a party to an offense, the court may look to events before, during, and after the offense, and can rely on actions showing an understanding and common design to commit the offense. *Burdine v. State*, 719 S.W.2d 309, 315 (Tex. Crim. App. 1986).

The hypothetically correct jury charge for attempted murder would require proof that (1) a person, (2) with the intent to commit murder, (3) does an act that amounts to more than mere preparation that tends but fails to effect the commission of the murder. *See* TEX. PENAL CODE ANN. § 15.01(a); *id.* § 19.02(b)(1). The law of parties is raised by the evidence regarding Count 2, which would allow conviction if (1) Vasquez conspired with

others to murder Miguel, (2) in the attempt to carry out the conspiracy, one of the conspirators committed the attempted murder of Marissa, (3) the attempted murder was committed in furtherance of the unlawful purpose to kill Miguel, and (4) the attempted murder should have been anticipated as a result of the carrying out of the conspiracy to kill Miguel. *Id.* § 7.02(b) (Vernon 2008).

## B.    Law of Parties Instructions in the Jury Charge

As part of his legal and factual sufficiency arguments, Vasquez argues his due process right to notice of the specific charges against him was violated because the jury charge authorized his conviction under the law of parties. *See* U.S. CONST. amend. XIV; TEX. PENAL CODE ANN. § 7.02(a)(2), (b). Specifically, on April 21, 2005, Vasquez was indicted for one count of murder and one count of attempted murder. The indictment alleged that Vasquez was the principal actor in both counts.[7] At the conclusion of trial, the trial court charged the jury on the two counts of the indictment, but the jury charge included

---

[7] The indictment alleged:

THE GRAND JURY, for the County of Hidalgo, State of Texas, duly selected, impaneled, sworn, charged and organized as such at the January term A.D. 2005 of the 139th Judicial District Court for said County, upon their oaths present in and to said court at said term that JUAN ANTONIO VASQUEZ hereinafter styled Defendant, on or about the 19th day of May A.D., 2003, and before the presentment of this indictment, in Hidalgo County, Texas, did then and there intentionally and knowingly cause the death of an individual, namely, Miguel Elizondo, by shooting him with a firearm;

COUNT TWO

THE GRAND JURY, for the County of Hildalgo, State of Texas, duly selected, impaneled, sworn, charged and organized as such at the January term A.D. 2005 of the 139th Judicial District Court for said County, upon their oaths present in and to said court at said term that JUAN ANTONIO VASQUEZ, hereinafter styled Defendant, on or about the 19th day of May A.D., 2003, and before the presentment of this indictment, in Hidalgo County, Texas, did then and there intentionally and knowingly with the specific intent to commit the offense of murder, did then and there attempt to cause the death of an individual, Marisa Elizondo, the victim, by pointing a firearm at her and pulling the trigger, said act amounting to more than mere preparation that tended but failed to effect the commission of the offense intended . . . .

16

the law of parties. *See* TEX. PENAL CODE ANN. § 7.02(a)(2), (b).[8]

It is well established that an indictment need not allege the law of parties for the trier of fact to find that the defendant was guilty as a party, and the failure to allege the law of parties in the indictment does not violate due process. TEX. PENAL CODE ANN. § 7.01(c) (Vernon 2003) ("[E]ach party to an offense may be charged and convicted without alleging that he acted as a principal or accomplice."); *Sorto v. State*, 173 S.W.3d 469, 476 & n.23 (Tex. Crim. App. 2005) (citing *Marable v. State*, 85 S.W.3d 287, 287 (Tex. Crim. App. 2002)); *see also Medrano v. State*, No. AP-75320, 2008 WL 5050076, at *6 (Tex. Crim.

---

[8] With respect to count 1, the jury charge stated:

> Now, if you find from the evidence beyond a reasonable doubt that on or about May 19, 2003, in Hidalgo County, Texas, the Defendant, JUAN ANTONIO VASQUEZ, did then and there intentionally and knowingly cause the death of an individual, namely MIGUEL ELIZONDO, by shooting him with a firearm, then you will find the Defendant, JUAN ANTONIO VASQUEZ, guilty of the offense of Murder as charged in the indictment.

> OR

> If you find from the evidence beyond a reasonable doubt that on or about May 19, 2003, in Hidalgo County, Texas, JUAN PABLO HINOJOSA or BENJAMIN PIEDRA, did then and there intentionally or knowingly cause the death of an individual, namely MIGUEL ELIZONDO, by shooting him with a firearm, and JUAN ANTONIO VASQUEZ did then and there acting with the intent to promote or assist the commission of the offense he solicited, encouraged, directed, aided or attempted to aid JUAN PABLO HINOJOSA to commit the offense by providing a firearm, then you will find the Defendant, JUAN ANTONIO VASQUEZ, guilty of the offense of Murder as charged in the indictment.

With respect to count 2, the charge provided:

> Now, if you find from the evidence beyond a reasonable doubt that the defendant JUAN VASQUEZ and JUAN PABLO HINOJOSA and or others unknown entered into a conspiracy to murder MIGUEL ELIZONDO and that pursuant thereto JUAN PABLO HINOJOSA or BENJAMIN PEIDRA did carry out, or attempt to carry out such conspiracy to murder MIGUEL ELIZONDO in that on or about MAY 19, 2003, in HIDALGO COUNTY, TEXAS, in the course of committing the murder of MIGUEL ELIZONDO, JUAN PABLO HINOJOSA or BENJAMIN PIEDRA intentionally caused the death of MIGUEL ELIZONDO by shooting him with a firearm, and BENJAMIN PIEDRA, pursuant to said conspiracy, if any, committed the attempted murder of MARISA ELIZONDO, by pointing a firearm at her and pulling the trigger, said act amounting to more than mere preparation that tended but failed to effect the commission of the offenses intended following in the execution of the conspiracy, if any, and was an offense that should have been anticipated as a result of carrying of the conspiracy, then you will find the Defendant guilty of the offense of Attempted Murder.

App. Nov. 26, 2008) (not designated for publication) (rejecting identical due process argument).[9] This rule applies to both a general party theory under section 7.02(a)(2) of the penal code and a conspiracy party theory under section 7.02(b). *Montoya v. State*, 810 S.W.2d 160, 165 (Tex. Crim. App. 1989). Accordingly, because Vasquez's argument lacks merit, it has no bearing on our legal or factual sufficiency analysis. *See Hayes v. State*, 265 S.W.3d 673, 679 (Tex. App.–Houston [1st Dist.] 2008, pet. ref'd).

## C. Count 1: Murder

Vasquez argues that, for various reasons, the evidence is legally and factually insufficient to support his conviction for the murder of Miguel. Vasquez first argues that his taped confession was unreliable and cannot support his conviction. Second, he argues that the confession was not sufficiently corroborated. Third, he makes several arguments regarding the discrepancy between his confession and the ballistic evidence presented at trial. We will address each argument in turn.

### 1. Reliability of the Confession

Without the confession, there is no evidence in the record that connects Vasquez to the crime as a party.[10] Vasquez argues that because the evidence at trial showed that his confession was unreliable, the evidence supporting his conviction under the law of

---

[9] *See also Vega v. State*, 198 S.W.3d 819, 825 n.3 (Tex. App.–Corpus Christi 2006), *vacated on other grounds*, 267 S.W.3d 912 (Tex. Crim. App. 2008); *Martinez v. State*, 841 S.W.2d 954, 957 (Tex. App.–Corpus Christi 1992), *vacated on other grounds*, 874 S.W.2d 684 (Tex. Crim. App. 1994).

[10] Although Soliz testified that Vasquez called Dallas to inquire who would pay for the "mess" created by the murder, this evidence, by itself, would be legally insufficient under Texas Penal Code section 7.02(a) to connect Vasquez to the crime as a party. *See* TEX. PENAL CODE ANN. § 7.02(a)(2); *Blake v. State*, 971 S.W.2d 451, 454 (Tex. Crim. App. 1998) (holding that a person is not an accomplice merely because he knows about the crime and fails to disclose it, or even tries to conceal the crime).

parties was legally and factually insufficient.[11]  We disagree.

Vasquez's argument hinges on (1) the testimony from Ranger Pacheco that the confession played to the jury was not the original recording, and (2) testimony from his expert witness, Yost, that the recording could have been manipulated.  Contrary to this evidence, however, Ranger Pacheco testified that he did not alter the statement in any way, and Officer Canales confirmed that the recording was accurate.

In a legal sufficiency review, we view the evidence in the light most favorable to the verdict.  *Vodochodsky*, 158 S.W.3d at 509.  Evidence is not rendered insufficient merely because contradicting evidence is introduced.  *Machett v. State*, 941 S.W.2d 922, 936 (Tex. Crim. App. 1996).  "[I]ndeed, [we] must assume that the factfinder resolved conflicts in the evidence in favor of the verdict reached."  *Id.*  Accordingly, the jury was entitled to credit Ranger Pacheco's testimony, confirmed by Officer Canales, that the confession played at trial was an accurate recording of Vasquez's interview, and it was entitled to rely on the confession.  *See id.*; *see also McCoy v. State*, No. 05-94-01714-CR, 1996 WL 457457, at *3 (Tex. App.–Dallas Aug. 7, 1996, pet. ref'd) (not designated for publication).

Vasquez also asserts that the evidence was factually insufficient for the same reason.  Again, we disagree.  Yost testified that he could not tell whether or not the recording had been manipulated.  Although Yost stated that Windows Media Player could be used to change a recording depending on how the program was updated, he never testified that the version of Windows Media Player on Ranger Pacheco's computer was updated in such a way to allow manipulation.  Yost stated that other computer programs

---

[11] We note that Vasquez does not challenge the admissibility of his confession.  Even if he had, however, a legal sufficiency review considers all the evidence, whether properly or improperly admitted. *Conner v. State*, 67 S.W.3d 192, 197 (Tex. Crim. App. 2001).

existed that would allow Ranger Pacheco to alter the recording, but he also testified that he did not find any of these programs on Ranger Pacheco's computer. At best, Yost's testimony was mere speculation that, under the right circumstances, the confession could potentially be manipulated.

While Vasquez presents a diatribe on the law of factual sufficiency review, we note that he has not discussed a single case involving similar facts. The Texas Court of Criminal Appeals has held that a confession can be "overwhelming evidence" supporting a conviction, *see Burdine,* 719 S.W.2d at 315, and we find that to be true in this case. We hold that the proof of Vasquez's guilt is not so weak as to undermine our confidence in the jury's verdict, nor is the proof outweighed by Yost's testimony. *Vodochodsky*, 158 S.W.3d at 509.

### 2. Corroboration of the Confession

Next, Vasquez argues that the evidence is legally and factually insufficient because the confession is not corroborated by independent evidence.[12] We disagree. An extrajudicial confession may not be used to demonstrate the *corpus delicti* of a crime. *See Fisher v. State*, 851 S.W.2d 298, 302 (Tex. Crim. App. 1993). *Corpus delicti* has been defined as follows:

> the corpus delicti [of a crime] embraces the fact . . . that somebody did the required act or omission with the required mental fault, under the required (if any) attendant circumstances, and producing the required (if any) harmful consequence, without embracing the further fact (needed for conviction) that the defendant was the one who did or omitted that act or was otherwise responsible therefor.

---

[12] The Court of Criminal Appeals, albeit in an unpublished opinion, recently clarified that the corroboration requirement is a separate and distinct inquiry from legal and factual sufficiency, with a different standard of review. *See Gonzalez v. State*, No. AP-75540, 2009 WL 1684699, at *3 (Tex. Crim. App. June 17, 2009) (not designated for publication).

*Id.* at 303 (quoting 1 W. LaFave & A. Scott, *Substantive Criminal Law* § 1.4 at 24 (2nd ed.1986)). Thus, the *corpus delicti* of a crime consists of "the fact that the crime in question has been committed by someone," and it must be established by evidence independent of the defendant's confession. *Id.*

The corroboration requirement ensures that a conviction is not obtained solely based on a confession when there is no other evidence that a crime has actually been committed. *See id.* at 303 n.3; *Gribble v. State*, 808 S.W.2d 65, 70 (Tex. 1990) (plurality op.). The corroboration requirement "was designed to prevent 'errors in convictions based upon untrue confessions alone' and 'guarded against the shocking spectacle and deleterious effect upon the criminal justice system when a murder victim suddenly reappeared, hale and hearty, after his self-confessed murderer had been tried and executed.'" *Bible v. State*, 162 S.W.3d 234, 246 (Tex. Crim. App. 2005) (quoting *Salazar v. State*, 86 S.W.3d 640, 644 (Tex. Crim. App. 2002)).

In a murder case, the *corpus delicti* is (a) the death of a human being that is (b) caused by the criminal act of another. *Fisher*, 851 S.W.2d at 303; *McDuff v. State*, 939 S.W.2d 607, 614 (Tex. Crim. App. 1997). Here, Marissa testified, and the investigating officers reiterated, that Miguel was shot at his home and died as a result. Juan Pablo Hinojosa was identified as the shooter. There is no question that Miguel died as a result of the criminal act of another. A confession need not be corroborated as to the identity of the perpetrator or as to whether the perpetrator had an accomplice. *See Gribble*, 808 S.W.2d at 70 ("It need not be corroborated as to the person who committed it, since identity of the perpetrator is not a part of the corpus delicti and may be established by an

21

extrajudicial confession alone."). Accordingly, we disagree that the evidence did not sufficiently corroborate Vasquez's confession.

### 3. Discrepancy Between the Confession and the Ballistic Evidence

Vasquez further argues that the evidence was insufficient to sustain the conviction for murder because his confession was inconsistent with the ballistics evidence presented at trial. Specifically, Vasquez argues that the State's ballistics expert, Hitchcox, testified that none of the ballistic evidence pertained to a .380 firearm, which is the type of gun that Vasquez admitted to giving Hinojosa before the murder. Additionally, Hitchcox testified that the 9-millimeter Luger shells that were found at the scene could not be used in a .380 caliber weapon. Vasquez points to the State's closing argument, during which the assistant district attorney attempted to explain the discrepancy, claiming that the argument was improper and created an impossible task for the jury by asking the jury to both believe and disbelieve Vasquez's confession.

Vasquez was tried as a party to the offense of murder under section 7.02(a)(2) of the Texas Penal Code. *See* TEX. PENAL CODE ANN. § 7.02(a)(2). Under that section, Vasquez would be guilty as a party to the offense if he, acting with intent to promote or assist the commission of the offense, solicited, encouraged, directed, aided, *or attempted to aid* Hinojosa in killing Miguel. *Id.* Vasquez's argument assumes that the State was required to prove that Vasquez gave Hinojosa the actual weapon that was used in the murder. This argument effectively reads "solicited," "encouraged," "directed," and "attempted to aid" out of the statute. Even if Vasquez gave Hinojosa a weapon that was intended to be used in the murder, but Hinojosa used a different weapon instead, Vasquez still *solicited, encouraged, directed, and attempted to aid* Hinojosa by providing him with

22

a weapon while harboring the requisite intent. *Id.*

Moreover, the evidence is not as clear as Vasquez proclaims. Hitchcox testified that even experienced policemen often confuse .380 caliber weapons with 9-millimeter weapons. A rational jury could have believed that Vasquez was mistaken about the caliber of weapon that he provided Hinojosa and that he actually provided a 9-millimeter weapon instead of a .380. And, 9-millimeter casings were found at the scene. Thus, the evidence was also legally sufficient to allow the jury to find, beyond a reasonable doubt, that Vasquez *aided* Hinojosa by providing a weapon with the intent that it be used in the murder, even if it was eventually used by Hinojosa's cohort during the criminal episode. *Id.* The contrary evidence—that a .380 was not used in the actual murder—is not so overwhelming that it renders the jury's verdict manifestly unjust. Accordingly, the evidence was legally and factually sufficient to sustain the murder conviction.

Finally, although Vasquez spends several pages of his brief complaining about the State's closing argument, Vasquez has neither raised a separate issue challenging the prosecutor's argument as improper, *see* TEX. R. APP. P. 38.1(f), nor did Vasquez object to the argument at trial. Vasquez, therefore, has not preserved a complaint for appeal regarding the closing argument. *See* TEX. R. APP. P. 33.1; *Cockrell v. State*, 933 S.W.3d 73, 89 (Tex. Crim. App. 1996). Furthermore, arguments by counsel are not evidence. *Motilla v. State*, 38 S.W.2d 821, 824 (Tex. App.–Houston [14th Dist.] 2001), *rev'd on other grounds*, 78 S.W.3d 352 (Tex. Crim. App. 2002). The allegedly improper closing argument does not support Vasquez's argument that the evidence is legally and factually sufficient. Accordingly, we hold that the evidence was legally and factually sufficient to support Vasquez's conviction for murder as alleged in Count 1, and we overrule Vasquez's first and

23

third issues.

## D.  Count 2:  Attempted Murder

With respect to Count 2, Vasquez argues that the evidence is legally and factually insufficient to support the conviction for attempted murder because Piedra's actions could not be anticipated.  Vasquez argues that the evidence showed that Piedra's actions were his own "independent impulse" and were not foreseeable because (1) he was not aware that Hinojosa intended to take another person with him to commit the murder, and (2) the attempted murder of Miguel's wife would result in a "muleta" against Piedra.

"'Independent impulse' embraces the theory that the accused, although admittedly intent on some wrongful conduct, did not contemplate the extent of criminal conduct actually engaged in by his fellow conspirators, and thus cannot be held vicariously responsible for their conduct."  *Fincher v. State*, 980 S.W.2d 886, 888 (Tex. App.–Fort Worth 1998, pet. ref'd) (citing *Mayfield v. State*, 716 S.W.2d 509, 513 (Tex. Crim. App. 1986), *overruled on other grounds, Solomon v. State*, 49 S.W.3d 356, 368 (Tex. Crim. App. 2001)).  This defense to vicarious criminal liability has been incorporated into section 7.02(b) of the penal code, which requires the State to prove that the defendant "should have anticipated" a felony committed by a co-conspirator in the course of committing the agreed-upon felony.  *Mayfield*, 716 S.W.2d at 515.

The evidence showed that Vasquez participated in the plan to kill Miguel, and he provided Hinojosa with a weapon to commit the murder.  *See Tippitt v. State*, 41 S.W.3d 316, 324-25 (Tex. App.–Fort Worth 2001, no pet.) (listing cases holding that proof of the defendant's knowledge that a gun would be used in a crime supported finding that murder should have been anticipated), *overruled on other grounds*, *Hooper v. State*, 214 S.W.3d

24

9, 15 (Tex. Crim. App. 2007). Although Vasquez testified that he did not know that Hinojosa planned to take another person with him to kill Miguel, the jury could have reasonably believed that this was part of the plan because Piedra complied with the plan to kill Miguel. *See Thompson v. State*, 54 S.W.3d 88, 95 (Tex. App.–Tyler 2001, pet. ref'd) ("Further, since the evidence does not indicate that any member of the group did anything but cooperate with the terms of the plan to commit robbery, we can infer that an agreement existed among the group members to commit robbery."). Furthermore, given that Vasquez and Hinojosa were part of a violent gang that planned the murder, it was certainly foreseeable that Hinojosa would recruit another gang member to assist. *Cf. id.* at 97; *Queen v. State*, 940 S.W.2d 781, 788 (Tex. App.–Austin 1997, no pet.) (holding evidence sufficient to prove that defendant should have anticipated murder by cohort where cohort was a member of a violent street gang and was known for his violent propensities).

It was also foreseeable that Hinojosa or Piedra would attempt to kill a witness to the crime in order to prevent their crime from being discovered, despite Vasquez's claim that doing so would result in a "muleta" against them. In fact, the testimony at trial established that Miguel was killed because he killed the brother of a gang member, even though a "muleta" would be put on him. Based on this testimony, the jury could infer that, even though a "muleta" may be the result of certain conduct, gang members, such as Piedra, may engage in the conduct anyway. We hold that the evidence was legally and factually sufficient to support the jury's finding that Vasquez should have anticipated the attempted murder of Marissa.

Vasquez also points out that the jury charge did not list Piedra as a known conspirator, even though Piedra was known to the prosecution as the person who

attempted to murder Marissa. Vasquez does not cite any relevant authority that requires this Court to reverse his conviction for legal and factual sufficiency on this basis, nor have we located any. *See* TEX. R. APP. P. 38.1(i). In fact, we are required to review this case under the hypothetically correct jury charge, which, under the facts of this case, would have included Piedra as a known conspirator. *See Malik*, 953 S.W.2d at 240. And as we discussed above, we can infer that Piedra was part of the agreement because of his compliance with the agreement. We overrule Vasquez's second, fourth, and fifth issues.

## III. UNANIMOUS VERDICT

By his sixth issue, Vasquez argues that the jury charge allowed a non-unanimous verdict. Specifically, the jury charge did not require the jury to agree on whether Vasquez solicited, encouraged, directed, aided, or attempted to aid in Miguel's murder. We disagree.[13]

"Under our state constitution, jury unanimity is required in felony cases, and, under our state statutes, unanimity is required in all criminal cases." *Ngo v. State*, 175 S.W.3d 738, 745 (Tex. Crim. App. 2005). All jurors must reach a consensus "on the same act for a conviction." *Francis v. State*, 36 S.W.3d 121, 125 (Tex. Crim. App. 2000). To analyze the unanimity requirement, we must examine the statute defining the offense "to determine whether the Legislature 'creat[ed] multiple, separate offenses, or a single offense' with different methods or means of commission." *Pizzo v. State*, 235 S.W.3d 711, 714 (Tex. Crim. App. 2005) (quoting *Jefferson v. State*, 189 S.W.3d 305, 311 (Tex. Crim. App. 2006)). "'[J]ury unanimity is required on the essential elements of the offense' but is

---

[13] Within this issue, Vasquez again asserts that the indictment failed to allege the law of parties. We have already addressed this argument and will not discuss it further, as the indictment was proper.

26

'generally not required on the alternate modes or means of commission.'" *Id.* (quoting

*Jefferson*, 189 S.W.3d at 311).  In other words, a jury charge may allege alternate modes

or means in the alternative without violating the unanimity requirement.  *See Kitchens v.*

*State*, 823 S.W.2d 256, 258 (Tex. Crim. App. 1991).

When reviewing the statute, we analyze its grammatical components:

> [I]t is necessary to identify the essential elements or gravamen of an offense and the alternate modes of commission, if any.  This is accomplished by diagramming the statutory text according to the rules of grammar.  The essential elements of an offense are, at a minimum: (1) "the subject (the defendant);" (2) "the main verb;" (3) "the direct object if the main verb requires a direct object (i.e., the offense is a result-oriented crime);" "the specific occasion[;]" and the requisite mental state. The means of commission or nonessential unanimity elements are generally set out in "adverbial phrases" that describe how the offense was committed.  Such phrases are commonly preceded "by the preposition 'by[.]'"

*Pizzo,* 235 S.W.3d at 714-15 (internal citations omitted).

For example, in *Kitchens*, the defendant argued that the jury charge allowed a non-

unanimous verdict where it allowed the jury to find that he committed capital murder by

committing the murder either (1) in the course of committing aggravated sexual assault,

or (2) in the course of committing robbery.  823 S.W.2d at 257.  The court held that the jury

was not required to agree on the mode or means of committing the capital murder, stating

that "'there is no general requirement that the jury reach agreement on the preliminary

factual issues which underlie the verdict.'" *Id.* (quoting *Schad v. Arizona*, 501 U.S. 624

(1991) (plurality op.)).

We have not located a case in Texas that addresses Vasquez's specific argument.

However, in *Hanson v. State*, the Austin Court of Appeals held that a jury charge did not

violate the unanimity requirement when it authorized conviction for a single offense under

27

either penal code section 7.02(a)(2), the provision challenged here, or 7.02(b), the conspiracy theory of party liability. 55 S.W.3d 681, 694 (Tex. App.–Austin 2001, pet. ref'd). The court explained:

> The law regarding jury unanimity appears to be that unanimity is required as to the offense committed but not as to the particular method or means of committing any one offense. Thus, if a jury is authorized to convict a defendant of either of two different offenses, the jury must unanimously agree as to which offense, if either, the defendant committed. But if a jury is authorized to convict a defendant on a finding that he committed a single offense in either of two different ways, the jury need not unanimously agree as to which method of commission the defendant actually employed.
>
> Here appellant was charged with the *single offense* of capital murder. The district court's jury charge, authorizing appellant's conviction on a finding that he either assisted another to commit the offense (section 7.02(a)(2)) or conspired with another who committed the offense in furtherance of the conspiracy (section 7.02(b)), was analogous to the charge in *Kitchens*. The two alternate theories of party liability were merely alternate methods or means by which appellant committed *the one charged offense*. Jury unanimity as to which theory of party liability applied was not necessary, and the general verdict of guilt was proper so long as either theory was proved.

*Id.* (emphasis added).

Applying the logic of these cases and the grammatical approach, we hold that the law of parties does not create a separate offense for purposes of jury unanimity. *See id.* The charged offense in Count 1 of the indictment was murder. Analyzing section 19.02(a)(2) of the penal code, the subject of the statute is the defendant. *See* TEX. PENAL CODE ANN. § 19.02(a)(2); *Pizzo*, 235 S.W.3d at 714-15. The main verb is "cause." TEX. PENAL CODE ANN. § 19.02(a)(2); *see Landrian v. State*, 268 S.W.3d 532, 537 (Tex. Crim. App. 2008). The direct object is "the death of an individual." TEX. PENAL CODE ANN. § 19.02(a)(2); *see Landrian*, 268 S.W.3d at 537. The requisite mental state is "intentionally." TEX. PENAL CODE ANN. § 19.02(a)(2).

28

Vasquez was charged with murder. Section 7.02(a)(2) does not provide a separate offense, but provides the modes and means sufficient to make a person liable for an offense as a party, including by soliciting, encouraging, directing, aiding, or attempting to aid another in the offense. TEX. PENAL CODE ANN. § 7.02(a)(2). These modes and means are set out in "adverbial phrases," preceded by the word "by," that describe how the defendant committed the offense. *Id.* As such, the law of parties in section 7.02(a)(2) merely identifies the means and modes for committing the offense, and the jury was not required to unanimously agree on which of these means or modes occurred. Accordingly, we overrule Vasquez's sixth issue.[14]

## IV. RESTITUTION

In his seventh issue, Vasquez argues that he had a right to have the jury determine the amount of restitution and that the evidence was insufficient to support the restitution ordered in this case. We disagree.

First, Vasquez argues that he was entitled to present evidence on the issue of restitution, *see* TEX. CODE CRIM. PROC. ANN. art. 42.037 (Vernon Supp. 2008),[15] and was

---

[14] Vasquez complains that the assistant district attorney improperly denied his right to a unanimous verdict by arguing during closing arguments that the jury could convict Vasquez if it found that he either provided the firearm or participated in ordering the hit on Miguel. Vasquez has not raised a separate issue challenging the prosecutor's argument as improper, *see* TEX. R. APP. P. 38.1(f), nor did Vasquez object to the argument at trial. Vasquez has not preserved a complaint for appeal regarding the closing argument. *See* TEX. R. APP. P. 33.1; *Cockrell v. State*, 933 S.W.3d 73, 89 (Tex. Crim. App. 1996).

[15] Subsection (k) of article 42.037 provides:

The court shall resolve any dispute relating to the proper amount or type of restitution. The standard of proof is a preponderance of the evidence. The burden of demonstrating the amount of the loss sustained by a victim as a result of the offense is on the prosecuting attorney. The burden of demonstrating the financial resources of the defendant and the financial needs of the defendant and the defendant's dependents is on the defendant. The burden of demonstrating other matters as the court deems appropriate is on the party designated by the court as justice requires.

entitled to have the jury consider restitution.  He reasons, therefore, that his constitutional right to a jury trial and his statutory right to have a jury assess punishment were violated. *See* U.S. CONST. amend. VI; TEX. CODE CRIM. PROC. ANN. art. 37.07 (Vernon Supp. 2008). He argues that these rights imply a right to pre-trial notice of the State's intent to seek restitution, which he did not receive.

Although Vasquez's trial counsel mentioned to the court that he had been notified that the State was seeking restitution on the day of formal sentencing, he never objected and asked the trial court for a ruling or for additional time to prepare.  Furthermore, he never objected that he was entitled to a jury trial on restitution.  Accordingly, Vasquez has waived his first argument.  *See* TEX. R. APP. P. 33.1(a)(1)(A); *Idowu v. State*, 73 S.W.3d 918, 921 (Tex. Crim. App. 2002) (holding defendant waived challenge to propriety of restitution order by failing to object in the trial court); *Broxton v. State*, 909 S.W.2d 912, 918 (Tex. Crim. App. 1995) (holding error was waived because trial objection did not comport with due process argument raised on appeal); *Lemos v. State*, 27 S.W.3d 42, 49 (Tex. App.–San Antonio 2000, pet. ref'd).

Second, Vasquez argues that there is no evidence in the record to support the trial court's order of restitution.[16]  Vasquez points to the faxes that the district attorney admitted into evidence from Miguel's family.  He does not argue that these bills establish a different sum of money—in fact, the bills add up to the precise amount of restitution ordered by the trial court.  Rather, Vasquez argues that these faxes were hearsay, which disallowed him

---

TEX. CODE CRIM. PROC. ANN. art. 42.037(k) (Vernon Supp. 2008).

[16] This argument may be raised on appeal despite the lack of an objection in the trial court.  *Meza v. State*, 153 S.W.3d 238, 245 (Tex. App.–El Paso 2004, no pet.).

the opportunity to cross-examine the witnesses against him.[17]   Accordingly, Vasquez

argues this evidence did not provide a sufficient factual basis to support the award of

restitution.  We disagree.

The amount of a restitution order must be just and must have a factual basis in the

record to satisfy due process requirements.  *See Campbell v. State*, 5 S.W.3d 693, 696

(Tex. Crim. App. 1999); *Cartwright v. State*, 605 S.W.2d 287, 289 (Tex. Crim. App. 1980).

 We review the trial court's order for an abuse of discretion.  *Jones v. State*, 713 S.W.2d

796, 797-98 (Tex. App.–Tyler 1986, no pet.).

In *Cartwright,* the trial court ordered restitution based on a pre-sentence

investigation report that mentioned the victim's financial losses but did not contain any

documentation of those losses.  *Cartwright*, 605 S.W.2d at 289.  The court noted that the

evidence was hearsay and held that the evidence was insufficient to establish the amount

of restitution.  *Id.*  Since the *Cartwright* decision, however, Texas Rule of Evidence 802 was

adopted, which treats hearsay evidence admitted without a proper objection as sufficient

in all respects to support a verdict.  *See* TEX. R. EVID. 802 ("Inadmissible hearsay admitted

without objection shall not be denied probative value merely because it is hearsay."); *Maloy*

*v. State*, 990 S.W.2d 442, 445-46 (Tex. App.–Waco 1999, no pet.).  Relying on rule 802,

several courts have held that an unobjected-to pre-sentence investigation report, though

hearsay, is sufficient to sustain an order of restitution.  *Maloy*, 990 S.W.2d at 445-46;

*Harrison v. State*, 713 S.W.2d 760, 764 (Tex. App.–Houston [14th Dist.] 1986, pet. ref'd)

---

[17] Although Vasquez notes on appeal, without much argument, that the State's introduction of hearsay evidence violated his right to confront the witnesses against him, he did not make that objection at trial. Accordingly, that argument was waived.  *Judd v. State*, 923 S.W.2d 135, 139 (Tex. App.–Fort Worth 1996, pet. ref'd).

(holding that where defendant did not object to presentence report, which contained hearsay letter from victim's mother detailing funeral expenses, court could properly base its restitution order on the report because it was admissible for all purposes); *Buehler v. State*, 709 S.W.2d 49, 52-53 (Tex. App.–Houston [1st Dist.] 1986, pet. ref'd); *see also Nugent v. State*, 2006 WL 2893429, at *2 (Tex. App.–Houston [1st Dist.] Oct. 12, 2006, pet. ref'd).

Here, although Vasquez objected to the evidence as "hearsay," he did not obtain an express ruling on that objection. *See* TEX. R. APP. P. 33.1(a)(1)(A). The State concedes that this objection was implicitly overruled; however, Vasquez has not argued or cited any authority supporting an argument that the trial court erred in overruling his objection. Rather, he merely argues that the evidence is insufficient because it is hearsay. Accordingly, the result is the same as if he had failed to object in the trial court. *See* TEX. R. APP. P. 38.1(f), (i). Because the admissibility of the evidence has not been challenged on appeal, the evidence is properly before this Court for all purposes, and we will consider it.

The evidence in this case consists of the bills for the funeral services rendered to Miguel. This documentary evidence is not the type that was found insufficient in *Cartwright*, where the trial court relied on a pre-sentence investigation report that did not contain any documentary evidence. *Cartwright,* 605 S.W.2d at 289; *see Jones*, 713 S.W.2d at 797-98 (distinguishing *Cartwright* on this ground). We hold that the documentary evidence was a sufficient factual basis to support the award of restitution. *Jones*, 713 S.W.2d at 797-98 .

Finally, Vasquez argues that the assistant district attorney committed misconduct

by misinforming the court of the law that governs restitution. Again, as with his other allegations of improper argument, Vasquez did not speak up and object to the legal arguments, nor did he offer another explanation of the law governing restitution. TEX. R. APP. P. 33.1(a)(1)(A). We overrule his seventh issue.

## V. CONCLUSION

Having overruled all of Vasquez's issues, we affirm the judgment.

_____
GINA M. BENAVIDES,
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Memorandum Opinion delivered and
filed this the 6th day of August, 2009.